

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-25-1994

# USA v. A.R.

Precedential or Non-Precedential:

Docket 93-3572

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"USA v. A.R." (1994). *1994 Decisions.* Paper 167.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/167

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 93-3572


UNITED STATES OF AMERICA

v.

A. R., A MALE JUVENILE

A. R.,

Appellant.


On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 93-cr-00125)


Argued:  May 26, 1994

Before: COWEN and ROTH, <u>Circuit</u> <u>Judges</u>
and BROWN, <u>District</u> <u>Judge</u>[1]

(Opinion Filed:  October 25, 1994)


Frederick W. Thieman
United States Attorney
Bonnie R. Schlueter
Assistant United States Attorney
Mark A. Rush (Argued)
Assistant United States Attorney
633 U. S. Post Office & Courthouse
Pittsburgh, PA 15219

---

    [1]Honorable Garrett E. Brown, Jr., United States District
Court Judge for the District of New Jersey, sitting by
designation.

Attorneys for Appellee

Thomas S. White
Federal Public Defender
W. Penn Hackney
First Assistant Federal Public Defender
Karen Sirianni Gerlach
Assistant Federal Public Defender
Michael J. Novara, Esquire (Argued)
Office of Federal Public Defender
960 Penn Avenue
415 Convention Tower
Pittsburgh, PA 15222
          Attorneys for Appellant

OPINION OF THE COURT

ROTH, Circuit Judge:

A.R., a juvenile, challenges an order of the district court granting the government's motion to proceed against him as an adult.  At the adult certification hearing, also referred to as the transfer hearing, the government introduced into evidence several psychiatric and psychological reports.  The evaluations of defendant, upon which these reports were based, were conducted in preparation for a similar certification motion, then pending in state court, regarding unrelated state charges.  A.R. objected to the use of these reports, contending that their use violated his Fifth and Sixth Amendment rights because the evaluations were performed without prior Miranda warnings and without prior notice to his appointed counsel.  A.R. also claims that the district court abused its discretion in granting the motion to proceed

against him as an adult.  Because we find these contentions to be without merit, we will affirm the order of the district court.

I.

On May 27, 1993, appellant A.R. and a group of companions allegedly spotted a white Pontiac Trans Am in a hotel parking lot and decided to steal it.  A.R. approached the car, pointed a gun at the head of the woman in the driver's seat and told her to get out because he was taking the car.  The driver and her passenger got out of the car.  A.R. and N.A., a female juvenile who accompanied him, got into the Trans Am and drove away.  They were apprehended following a high-speed chase.  A.R. was charged with conspiracy to commit carjacking, the substantive offense of carjacking, and use of a firearm during the commission of a crime of violence.  After he was in custody, state authorities also filed charges against him for a number of armed robberies at ATM machines committed the day before the carjacking.

At the time of his arrest, A.R. was 17 years old.  He was taken to a juvenile detention center where he underwent a psychological evaluation on June 11 and a psychiatric evaluation on June 16.  Both were conducted at the request of the district attorney, working on the state charges, for use in a hearing in state court to determine whether A.R. should be certified as an adult.  The reports of these evaluations were designed only for use in the certification proceeding and were not intended for later use in either a criminal trial or juvenile delinquency proceeding.

The reports concerned A.R.'s intellectual development and psychological maturity. In addition, the reports commented upon his past problems, his response to prior treatment efforts, and the likelihood or not of future treatment within the juvenile justice system being successful. The reports included summaries of the doctors' conversations with A.R. concerning the carjacking incident and his general course of delinquent behavior. They also included observations on his attitude and social interaction. The psychiatrist's report concluded that A.R. had a "conduct disorder" and a "personality disorder, mixed type," and stated in its recommendation that "[h]is behavior thus far indicates need for a highly secure facility." App. at 279. The psychologist focused on A.R.'s intransigence and sarcasm during their interview, as well as his reported difficulties in "thinking." The report concludes:

> It appears that [A.R.] was not honest in today's interview. Moreover, he made a number of statements which are alarming. Although he claims not to remember the latest incident, he never expressed any regret over his behavior. Instead, he tends to glorify himself and what he has done. [A.R.] has already demonstrated his failure to benefit from placement and his open defiance of the rules of those placements. At this time, I cannot think of anything more that the juvenile system can offer him.

App. at 281.

According to A.R., he was not given Miranda warnings prior to the evaluations, nor was his counsel given notice that they were to occur. The record before us contains no explicit

factual findings concerning the truth of the allegations in the report.[2]  The government concedes that the usual practice prior to this type of evaluation includes neither the giving of Miranda warnings nor the provision of notice to counsel.  We will assume that no warning or notice was given.

After the government filed its information in this case, it sought the district court's permission to proceed against A.R. as an adult.  Pursuant to 18 U.S.C. § 5032, the district court held a hearing on the adult certification motion on October 13, 1993, at which both sides presented witnesses.

The statute provides that, at such a transfer hearing,
> [e]vidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032.  At the hearing, the district court heard testimony from a number of witnesses familiar with A.R. and his background.  Although neither of the doctors, who conducted the evaluations at issue on this appeal, were called to testify, their reports were nevertheless admitted into evidence over

_____

[2]But see footnote 3, supra.

A.R.'s objection that they were obtained in violation of his Fifth and Sixth Amendment rights.[3]

A.R. did present his own psychiatrist, Dr. Wettstein. Dr. Wettstein testified that he felt that "there is a reasonable possibility that [A.R.] can be held in the juvenile system clinically, psychologically, psychiatrically." Ap. at 247. He acknowledged, however, that A.R. "doesn't have good enough impulse control at this point to manage things. So he has to live in a residential facility that's fairly secure," App. at 251, and agreed that A.R. is "a dangerous individual." App. at 256.

On October 25, 1993, the district court entered an order granting the government's motion to proceed against A.R. as an adult. A.R. filed a timely notice of appeal on November 2, 1993.

II.

The district court had jurisdiction over this juvenile delinquency proceeding pursuant to 18 U.S.C. § 5032. We have jurisdiction pursuant to the collateral order exception to the final judgment rule. 28 U.S.C. § 1291. See Government of the Virgin Islands in the Interest of: A.M., No. 93-7736 (3d Cir. Aug. 16, 1994) (holding that transfer orders fall within the

---

[3] Counsel did not request an opportunity to cross-examine the doctors who prepared the reports or present evidence concerning their backgrounds, methods or conclusions. Once the reports were admitted, he has taken no further steps to contest their validity.

collateral order doctrine). We have plenary review of the district court's disposition of A.R.'s constitutional claims. United States v. Adams, 759 F.2d 1099, 1106 (3d Cir.), cert. denied, 474 U.S. 971 (1985). Because the decision to transfer a juvenile for prosecution as an adult is committed to the sound discretion of the trial court, we review that decision only for an abuse of discretion. United States v. Doe, 871 F.2d 1248, 1255 (5th Cir.), cert. denied, 493 U.S. 917 (1989).

### III.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The privilege against self-incrimination is rooted in the notion that ours is an accusatorial, rather than inquisitorial system. As such, the individual may not be forced, through his own testimony, to assist the state in securing a conviction against him. Toward that end, the privilege "protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used." In re Gault, 387 U.S. 1, 47–48 (1967) (quoting Murphy v. Waterfront Comm'n, 378 U.S. 52, 94 (1964) (White, J., concurring)). The focus, then, is not on the type of proceeding in which a statement is made "but upon the nature of the statement or admission and the exposure which it invites." Id. at 49.

A.R.'s Fifth Amendment challenge to the use of the reports of the psychiatric and psychological evaluations at the transfer hearing is based on the Supreme Court's decision in Estelle v. Smith, 451 U.S. 454 (1981). In Estelle, which concerned a capital murder prosecution, the trial court ordered a pre-trial psychiatric evaluation of the defendant in order to determine whether he was competent to stand trial. The defendant was not informed of his rights prior to the evaluation, was adjudged competent to stand trial, and was found guilty of first degree murder. The problem arose at the sentencing phase of the trial when the court allowed the government to present the testimony of the psychiatrist who performed the evaluation, concerning the future dangerousness of the defendant.

In affirming the order vacating the death sentence, the Court provided three bases for its conclusion that the defendant's Fifth Amendment rights were violated. First, because of "the gravity of the decision to be made at the penalty phase," the Court noted that it could "discern no basis to distinguish between the guilt and penalty phases of respondent's capital murder trial so far as the protection of the Fifth Amendment privilege is concerned." 451 U.S. at 462-63. Second, the Court found it significant that the use of defendant's statements from the evaluation in the penalty phase went considerably beyond "the limited, neutral purpose of determining his competency to stand trial" for which the evaluation was ordered. Id. at 465.

> Consequently, the interview with Dr. Grigson
> cannot be characterized as a routine
> competency examination restricted to ensuring
> that respondent understood the charges
> against him and was capable of assisting in
> his defense.  Indeed, if the application of
> Dr. Grigson's findings had been confined to
> serving that function, no Fifth Amendment
> issue would have arisen."

Id. (emphasis added).  Finally, the Court examined the consider-
ations undergirding Miranda's restrictions on custodial
interrogation.  It concluded that the use of the psychiatrist's
testimony at the penalty phase in effect transformed what, it
again emphasized, was otherwise "a neutral competency
examination" into custodial interrogation within Miranda's
purview.

> When Dr. Grigson went beyond simply reporting
> to the court on the issue of competence and
> testified for the prosecution at the penalty
> phase on the crucial issue of respondent's
> future dangerousness, his role changed and
> became essentially like that of an agent of
> the State recounting unwarned statements made
> in a postarrest custodial setting.

Id. at 467.

Viewed in terms of the general Fifth Amendment
principles outlined above, the reason the evaluation created a
self-incrimination problem when used at the penalty stage, but
not at the competency determination, lies in the purpose and
effect of the evaluation's use.  At the penalty stage in Estelle,
the defendant's statements were being used to prove an element of
the government's burden in the criminal prosecution.  At the

competency stage, however, the issue of guilt or innocence is yet to be addressed.  Before the substance of the case can be addressed, the court has to determine whether the status of the defendant is such that the case can proceed at all.  As the Court concluded in Estelle, as long as the use of the evaluation is confined to this preliminary scope, there is no Fifth Amendment violation.

Consideration of the present case in light of the analysis in Estelle, informed by the purposes of the privilege against self-incrimination, leads us to conclude that there was no violation of A.R.'s Fifth Amendment rights.  Other courts addressing adult certification hearings have repeatedly characterized them as civil in nature,[4] primarily because they result only in a decision upon the status of the individual.  See, e.g., United States v. Parker, 956 F.2d 169, 171 (8th Cir. 1992); United States v. Brian N., 900 F.2d 218, 220 (10th Cir.

---

[4] Our analysis of this point, as well as of the issues presented more generally in this case, is informed by the Supreme Court's opinion in Kent v. United States, 383 U.S. 541 (1966), in which it considered the question of what protections must be afforded a juvenile at a transfer hearing.  The Court did not express an opinion as to the merits of transfer in the case, but held that "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony--without hearing, without effective assistance of counsel, without a statement of reasons."  Id. at 554.  The Court cautioned, however, that "[w]e do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment."  Id. at 562.

1990).  The determination is not one of guilt or innocence, or even of delinquency or non-delinquency, but rather concerns the manner in which the state elects to proceed against an alleged malefactor.  As such, the district court "is entitled to assume that the juvenile committed the offense charged for the purpose of the transfer hearing."  In re Sealed Case, 893 F.2d 363, 369 (D.C. Cir. 1990).  Furthermore, while the evidence introduced at the hearing must be consistent with the concepts of due process and fundamental fairness, it need not be in compliance with the Federal Rules of Evidence.  United States v. Doe, 871 F.2d at 1255.  And although the government bears the burden of rebutting the statutory presumption of juvenile treatment, the government need only persuade the court by a preponderance of the evidence.  Parker, 956 F.2d at 171.  Finally, the ultimate decision on waiver is committed to the sound discretion of the trial court.  United States v. Gerald N., 900 F.2d 189, 191 (9th Cir. 1990).

The determination that the trial court must make at an adult certification hearing, then, parallels that which must be made at a competency hearing.  Both proceedings deal with a preliminary forensic determination.  More fundamentally, both deal with whether a defendant should be exempted from criminal prosecution because he falls within a category of persons who, in the eyes of the law, are not viewed as fully responsible for their acts.  The use of the psychiatric or psychological reports is very similar, whether they are generated when an adult is

examined for competency or a juvenile is examined for certification as an adult.  In neither case does the report bear on the ultimate substantive question of guilt or innocence.  In both situations, the evaluation serves the same "limited, neutral purpose."[5]  The failure to administer <u>Miranda</u> warnings to A.R. prior to the evaluations did not deprive him of his right against self-incrimination, because the use of the evaluations at the transfer hearing did not incriminate him.[6]

---

[5] The transfer statute provides that "[s]tatements made by a juvenile prior to or during a transfer hearing shall not be admissible at subsequent criminal proceedings."  18 U.S.C. § 5032.

[6] We note that we are aware of and have considered <u>United States v. J.D.</u>, 517 F.Supp. 69 (S.D.N.Y. 1981), which is apparently the only other case considering this precise question and which reached a contrary result.  The court's reasoning in that case, however, was explicitly based on the Supreme Court's statement in <u>Gault</u> that "no person shall be 'compelled' to be a witness against himself when he is threatened with deprivation of his liberty."  387 U.S. at 50.  In <u>Allen v. Illinois</u>, 478 U.S. 364, 372 (1986), the Supreme Court backed away from this broad statement of the privilege's applicability in civil proceedings, here a civil commitment under the Illinois Sexually Dangerous Persons Act, proclaiming that it "is plainly not good law."
We note further that the court in <u>United States v. J.D.</u> gave as one reason for its decision the fact that "defendants would be open to a far larger period of incarceration if the transfer motion were to be successful than if they were to be proceeded against as juveniles."  517 F.Supp. at 72.  However, to date there has not been defined a constitutional right to be tried in the court where, if the defendant were to be found guilty, the lightest sanction would be imposed.  <u>Cf.</u> <u>Sill v. Pennsylvania State University</u>, 462 F.2d 463 (3d Cir. 1972) ("It is well settled that there is no constitutional right to be heard by a particular tribunal", citing <u>Crane v. Hahlo</u>, 258 U.S. 142 (1922)).  For this reason, we conclude that, despite the penalty that may ensue, the civil proceeding to select the appropriate forum in which to try a defendant does not implicate Fifth Amendment protections against self-incrimination.

IV.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."  A.R.'s Sixth Amendment challenge is also based on Estelle.   The accused in that case, Ernest Benjamin Smith, had appointed counsel at the time of the examination.  The Supreme Court held that, under the circumstances there presented, Smith had "a Sixth Amendment right to the assistance of counsel before submitting to the pretrial psychiatric interview."  451 U.S. at 469.  The Court explained the rationale for the right to counsel as follows:

> It is central to the Sixth Amendment principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.

451 U.S. at 470 (brackets omitted) (quoting United States v. Wade, 388 U.S. 218, 226-27 (1967)).  The Sixth Amendment violation in Estelle stemmed from the fact that the psychiatric evaluation "proved to be a 'critical stage' of the aggregate proceedings against respondent."  Id.  Thus the evaluation was not itself inherently the sort of event to which the right to counsel attaches.  Instead, as was the case under the Fifth Amendment, the psychiatrist's testimony only became a problem

when used for something apart from, and with more dire potential consequences than, the competency determination.[7]

This reading of Estelle is consistent with the rest of the Court's Sixth Amendment jurisprudence, from which the Ninth Circuit has extracted three factors by which to measure whether a given proceeding is a "critical stage" such that the right to counsel attaches:

> First, if failure to pursue strategies or remedies results in a loss of significant rights, then Sixth Amendment protections attach.  Second, where skilled counsel would be useful in helping the accused understand the legal confrontation ... a critical stage exists.  Third, the right to counsel applies if the proceeding tests the merits of the accused's case.

Menefield v. Borg, 881 F.2d 696, 698-99 (9th Cir. 1989) (citations to Mempa v. Rhay, 389 U.S. 128 (1967), and United States v. Ash, 413 U.S. 300 (1973), omitted); United States v. Bohn, 890 F.2d 1079, 1080-81 (9th Cir. 1989).  See also Meadows v. Kuhlmann, 812 F.2d 72, 76-77 (2d Cir.), cert. denied, 482 U.S. 915 (1987); 2 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 11.2(b) (1984).

---

[7] That Estelle's holding that the right to counsel attached to the psychiatric evaluation depends on the later use of the evaluation at the sentencing proceeding is supported by the Court's opinions in Satterwhite v. Texas, 486 U.S. 249 (1988), in which it characterized Estelle as holding "that defendants formally charged with capital crimes have a Sixth Amendment right to consult with counsel before submitting to psychiatric examinations designed to determine their future dangerousness," id. at 251 (emphasis added), and Powell v. Texas, 492 U.S. 680 (1989) (per curiam).

Applied to the instant case, it seems clear that the evaluations of A.R. are not the sort of "critical stage" to which the right to counsel attaches. None of the factors identified by the Ninth Circuit are directly implicated, nor, in the language of Estelle, would the absence of counsel "derogate from the accused's right to a fair trial." 451 U.S. at 470. No significant rights are at stake in the evaluation itself. At the transfer hearing, where a determination is actually made as to the juvenile's status, a juvenile has the right to counsel as well as the opportunity to attack the methods employed and conclusions reached by the person who conducted the evaluation. Nor is the evaluation a legal confrontation that can only be fully understood after consultation with counsel. Furthermore, the merits of the juvenile's case are not in issue for, as noted above, the trial court in the context of an adult certification hearing may assume that the juvenile committed the offense.

For these reasons, and because § 5032 provides that a juvenile's statements made "prior to or during a transfer hearing" may not be used at a criminal trial, the right to a fair trial, which underlies Estelle, is not implicated. Simply stated, counsel would serve no functional purpose at a psychiatric evaluation the results of which are used, as is necessarily the case here, only in making the neutral determination whether a juvenile should stay within the juvenile

justice system or be treated as an adult.[8]  A.R., therefore, had
no Sixth Amendment right to counsel in connection with the
evaluations.

                              V.

          A.R.'s final claim is that the district court abused
its discretion in deciding to certify him for adult prosecution.
In general, a district court abuses its discretion when it acts
in a fashion "clearly contrary to reason and not justified by the
evidence."  Vizzini v. Ford Motor Co., 569 F.2d 754, 760 (3d Cir.
1977).  In the context of a certification order, such an abuse of
discretion occurs if the court fails to make the factual findings
as required by 18 U.S.C. § 5032; see United States v. C.G., 736
F.2d 1474, 1479 (11th Cir. 1984), or if the court's factual
findings are clearly erroneous; see United States v. Gerald N.,
900 F.2d 189 (9th Cir. 1990); see also United States v. G.T.W.,
992 F.2d 198 (8th Cir. 1993).

---

[8] Further support for our holding may be found in this
court's decision in United States ex rel. Stukes v. Shovlin, 464
F.2d 1211 (3d Cir. 1972).  In that habeas case the state trial
court had, on its own motion and without notice to either side,
ordered the defendant to undergo a psychiatric examination for
purposes of determining whether he was competent to stand trial.
We held that the examination was not a "critical stage" of the
proceedings.  Id. at 1213 & n.5.  With respect to the assertion
that counsel should have been given notice of the evaluation, we
held as follows:  "The examination was completely ex parte
without notice to or knowledge of it by either defense counsel or
the prosecution.  Under the circumstances shown in this record,
we find that the failure to notify counsel of the examination did
not deny defendant a fair trial or the effective assistance of
trial counsel."  Id. at 1214.

A.R. makes no allegation that these conditions exist. Though the district court's opinion is brief, it manifests full consideration of the evidence presented at the hearing. The court made specific findings under each of the six statutory factors and explained how each weighed in the transfer decision. A.R. attacks this weighing, suggesting that the court overemphasized the "seriousness of the offense" factor. Carjacking is a violent felony, however, and A.R. threatened his victims with a .25 caliber semi-automatic pistol. The court was entitled to give more weight to this factor than to others, and generally to weigh the statutory factors as it deemed appropriate. United States v. Doe, 871 F.2d 1248, 1255 (5th Cir. 1989).

Next, A.R. suggests that the court did not give proper emphasis to the testimony of his witnesses. Credibility determinations of this sort, however, depend on first-hand observation of the witness and for that reason are best left to the judgment of the district court. Absent a claim of prejudice--and we are presented with no such claim here--this court will not second-guess the district court's conclusions concerning the credibility of witnesses and its implications for the weighing of testimony based on a cold record.

Finally, A.R. suggests that the district court improperly shifted the burden of proof because its opinion states that "the nature of the offenses with which he is charged and his

response to previous treatment efforts do not indicate a probability of rehabilitation as a juvenile." United States v. A.R., No. 93-125, at 7 (W.D.Pa. Oct. 25, 1993).  The statute clearly intends a presumption of juvenile treatment, and the government bears the burden of establishing that transfer is warranted.  Some courts have adopted a "preponderance" standard, United States v. Parker, 956 F.2d 169 (8th Cir. 1992), while others have opted for a "clearly convincing" standard.  United States v. M.L., 811 F.Supp. 491 (C.D.Cal. 1992).  Here there is no claim of insufficient evidence, however, and the quoted sentence is only one aspect of the district court's consideration.  The ultimate standard, set forth in the statute, is whether the court finds that the transfer "would be in the interests of justice."  18 U.S.C. § 5032.  Because the district court followed proper procedures and made findings with substantial support in the record, its order should be affirmed.

VI.

For the foregoing reasons, the order of the district court granting the government's motion to proceed against A.R. as an adult will be affirmed.