UNITED STATES of America, Appellee,

v.

John DOE, Defendant–Appellant.

No. 342, Docket 92–1438.

United States Court of Appeals,
Second Circuit.

Argued Nov. 8, 1994.

Decided Feb. 23, 1995.

Patricia A. Pileggi, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., Peter A. Norling, Asst. U.S. Atty., on the brief), for appellee.

Larry J. Silverman, New York City (Howard Clyman, on the brief), for defendant-appellant.

Before: FEINBERG, KEARSE, and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant John Doe, 17 years old at the time of his arraignment on the present charges, appeals from an order of the United States District Court for the Eastern District

of New York, Carol Bagley Amon, *Judge*, granting the government's motion under the Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042 (1988) ("JDA" or the "Act"), to proceed against him as an adult. The Act governs federal prosecutions of "juveniles," defined, insofar as is pertinent here, as persons who have not yet attained the age of 18 years, *see id.* § 5031. With certain exceptions that are not applicable here, the Act provides that a person who is alleged to have committed, while a juvenile, an act that would have been a crime if committed by an adult is not to be proceeded against in federal court unless, upon the requisite certification of the Attorney General of the United States, the district court finds that prosecution in federal court would be in the interest of justice. *See id.* §§ 5031, 5032. If the juvenile is to be proceeded against in federal court, the Act gives him special rights with regard to, *inter alia*, pretrial detention, *see id.* § 5035 (prohibiting, *e.g.*, confinement in contact with adult offenders); a speedy trial, *see id.* § 5036 (generally requiring trial within 30 days after initial detention); and the sealing of court records, *see id.* § 5038. On appeal, Doe contends principally that the district court erred (1) in ruling that the government had established that permitting it to proceed against him as an adult would be in the interest of justice, and (2) in failing to dismiss the proceedings against him for violation of his speedy trial rights under the Act. Finding no error in the decision of the district court, we affirm.

## I. BACKGROUND

The present proceedings began in September 1991 with an indictment handed down in the Eastern District of New York charging Doe and 10 codefendants with a host of crimes involving robbery and extortion, in violation of, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d) (1988), and the Hobbs Act, 18 U.S.C. § 1951 (1988), in connection with their participation in the activities of a street gang known as Born To Kill ("BTK"). The gang was alleged to have engaged in numerous acts of robbery, extortion, and murder in New York and other places. Doe was alleged to have

participated in the BTK conspiracy in general, in BTK's November 1990 robbery of a jewelry store in Doraville, Georgia, and in BTK's extortion of services from an electronics firm in Manhattan during the first six months of 1991.

When the indictment was filed, Doe was in custody in Utica, New York, pending trial on other armed robbery charges. He was arraigned on the present charges in the Eastern District on October 18, 1991.

### A. *The Early Proceedings*

On the day of his arraignment, Doe was interviewed by a pretrial services officer and by Daniel Kumor, an agent of the Bureau of Alcohol, Tobacco and Firearms ("BATF"). Doe gave the pretrial services officer a name that was eventually discovered to be false. He gave February 12, 1974, as his date of birth, which would have made his then-current age 17. However, Doe also said he had left Vietnam in 1983, and he told Kumor that he was 12 or 13 when he left Vietnam. These two statements indicated that Doe was 20 or 21 in October 1991 and was past his 18th birthday in November 1990, the time of the earliest of the offenses charged here.

Doe asked the pretrial services officer to contact his attorney in the pending Utica case. When contacted, that attorney stated that February 12, 1974, was the date of birth on a xerox of an alien registration card that Doe had given him. The pretrial interview report stated that law enforcement agents believed Doe was born in 1970, not 1974. A government informant who had known Doe for 2½ years told agents he believed Doe was 20 or 21 years old. Further, upon two prior arrests in New York City, one in 1990 and the other in early 1991, Doe had stated his date of birth as, respectively, April 12, 1972, and February 12, 1970, either of which would have made him older than 18 at the time of the alleged offenses.

At his October 18, 1991 arraignment, Doe was represented by Larry J. Silverman, Esq., appointed that day. Trial of the case was scheduled for January 6, 1992. Silverman consented to the entry of an order of excludable delay pursuant to the Speedy Tri-

al Act, 18 U.S.C. § 3161 *et seq.* (1988), for the period between October 18 and January 6 on the ground that the case was complex. Silverman did not raise any question as to whether Doe was a juvenile and thus entitled to special treatment under the JDA.

Following the arraignment, the government sent Silverman a discovery letter dated October 18, 1991, which noted, *inter alia,* that just prior to his arraignment on the present charges, Doe had said that he was born on February 12, 1974. On October 28, 1991, the court held a hearing on the government's motion for Doe's pretrial detention. Doe raised no question as to his juvenile status.

On October 31, Silverman moved for an extension of the court's November 4, 1991 deadline for filing motions, in order to allow him to file a "fully documented" motion to sever Doe's trial from that of his codefendants. At the time of the motion for an extension, Silverman did not raise the question of whether Doe was a juvenile.

### B. The Motion To Dismiss on the Ground of Juvenile Status

On December 10, 1991, Silverman moved to dismiss the indictment on the ground that Doe was a juvenile at the time of the alleged offenses. After the government received additional information in the form of, *inter alia,* Doe's Social Security Card, his alien registration card, and New York City public school records, all in Doe's real name, it conceded that Doe was a juvenile within the meaning of the Act. Accordingly, on December 24, 1991, the government filed a juvenile information, with charges essentially mirroring the charges against Doe in the original indictment, and moved to transfer Doe to adult status. The transfer motion was supported by, *inter alia,* a certification by the United States Attorney for the Eastern District of New York that the offenses charged were crimes of violence and that there was a substantial federal interest in the case, warranting the exercise of federal jurisdiction.

At a January 2, 1992 hearing, the court dismissed the indictment in light of the government's concession as to Doe's age and its filing of the juvenile information. Doe argued that the information too should be dismissed on the ground that the government's transfer motion was not supported as required by the Act, contending, *inter alia,* that the United States Attorney for the Eastern District lacked the authority to make the supporting certification because Doe was not alleged to have committed any crime of violence in the Eastern District. In colloquy with counsel, the court sought to resolve the transfer and dismissal motions expeditiously in an attempt to begin the trial of all of the defendants, including Doe, on or shortly after the scheduled January 6 trial date. Silverman advised the court, however, that he was prepared to "take advantage of every procedural opportunity not to have [Doe] tried with the other defendants" (Hearing Transcript, January 2, 1992, at 15). He stated that he would appeal any decision by the district court to transfer Doe to adult status; he stated that if the government were to succeed on its motion to transfer Doe, he would also insist on having 30 days in which to prepare for trial, *see* 18 U.S.C. § 3161(c)(2). In connection with the government's transfer motion, Silverman asked for an adjournment to give him time to prepare, and he stated that Doe waived his right to be tried within 30 days of the filing of the juvenile information. On January 3, Doe moved to dismiss the information on the additional ground that, because the delay between his October 18 arraignment and the December 24 filing of the juvenile information exceeded 30 days, his right to a speedy trial under 18 U.S.C. § 5036 had been violated.

A hearing on the government's transfer motion and Doe's motion to dismiss was commenced on January 9, 1992 ("JDA hearing"), but, because of numerous adjournments in light of, *inter alia,* negotiations toward a plea agreement, the hearing was not concluded before June 1992. Trial of eight of Doe's codefendants proceeded without Doe. Those codefendants were convicted on virtually all of the counts against them, and, with one exception, their convictions were affirmed on appeal. *See United States v. Thai,* 29 F.3d 785 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 456, 130 L.Ed.2d 364 (1994).

At the JDA hearing, New York City Police Detective William Oldham testified with respect to, *inter alia,* the authorities' efforts to determine Doe's real date of birth. Oldham stated that he had placed little credence in the xerox copy of Doe's alien registration card possessed by Doe's Utica attorney because copies of such documents can easily be altered and because, in his experience, defendants often give false dates of birth in order to try to gain the benefits of juvenile status. Oldham pointed out the information the authorities had received from an informant that Doe was 20 or 21 (which matched the information Doe had given Kumor and the pretrial services officer on October 18, 1991, as to his age upon his 1983 departure from Vietnam) and the information Doe had given on two prior arrests indicating that in November 1990 he was over the age of 18.

The government advised the court that law enforcement officers had attempted to investigate Doe's age, but were hampered in obtaining information because, upon his previous arrests, Doe had given the police a number of different names, addresses, and dates of birth. The officers contacted the Immigration and Naturalization Service ("INS") and the high school Doe said he had attended, but they did not find his records because they were inquiring with respect to the name given by Doe on the date of his arraignment, which was false. They investigated one of the many addresses previously given by Doe and found it to be a hotel that was a known center of operations for BTK, but they did not investigate all of the addresses he had given. Police records contained the name of Doe's father and several phone numbers, but, after trying one of the numbers and finding it to be incorrect, the officers did not continue to try to contact his father.

Oldham testified that he did not search records of the various governmental agencies for information on Doe's father. Had the agents searched at INS, the New York State Department of Motor Vehicles, the New York City Department of Social Services, or the Kings County Family Court, in which Doe's father had filed a petition in December 1989 indicating that Doe was a person in

need of supervision, they would have found records with respect to Doe's father.

## C. *The District Court's Decision*

In an order dated June 29, 1992 ("June 29 Order"), referring to "the reasons set forth on the [sealed] record on June 26, 1992," the district court denied Doe's motion to dismiss the information and granted the government's motion to transfer Doe to adult status. With respect to the challenge to the authority of the United States Attorney for the Eastern District to make the certification required by the Act, the court observed that 18 U.S.C. § 16 (1988) "defines a crime of violence as one where there is substantial risk that physical force will be used against the person" (Hearing Transcript, June 26, 1992 ("June 1992 Tr."), at 18). The RICO conspiracy with which Doe and the other BTK members were charged alleged as predicate acts many acts of robbery, assault, murder, and extortion; the court reasoned that a RICO conspiracy involves a substantial risk that physical force will be used where, as here, the predicate acts are crimes of violence. Since the seat of the conspiracy was in the Eastern District of New York, the court found that the United States Attorney for the Eastern District was authorized to make the certification required by the Act.

With respect to Doe's contention that his right to a speedy trial under § 5036 had been violated, and thus required dismissal of the information with prejudice, *see* 18 U.S.C. § 5036 ("Except in extraordinary circumstances, an information dismissed under this section may not be reinstituted."), the court denied the motion to dismiss on the grounds that Doe and his counsel had in effect consented to the delay and that dismissal would be contrary to the interests of justice. First, the court found that by the time of the October 28 detention hearing at the latest, Silverman should have been aware from at least (a) his conversations with Doe, and (b) the government's October 18 discovery letter, that Doe claimed to be a juvenile. The court noted that counsel, notwithstanding his knowledge of Doe's age, had sought an adjournment of the court's November 4 deadline for motions and had waited until nearly

two months after Doe's arraignment to raise the issue before the court; that counsel acknowledged that he had deliberately not raised the matter with the court at the earliest possible time; and that the delay had achieved counsel's proclaimed primary objective of having Doe's trial severed from that of his codefendants. The court concluded that these actions reflected consent by Doe and his counsel to the delay.

The court also found that refusing to dismiss on account of the delay would be in the interest of justice for several reasons. First, while noting that greater efforts by the government could have turned up accurate information with regard to Doe's age, the court noted that the government had a very credible basis to believe that Doe was in fact an adult. Doe himself had given the government a basis for believing he was an adult by virtue of the information he provided just prior to his arraignment on the present charges, and he hampered the government's efforts to determine his age by giving a false name at that time and by having given different dates of birth on prior arrests. The court inferred that had Doe not given false information there would have been no delay, pointing out that with respect to one of Doe's juvenile codefendants who gave the government accurate information as to his name and date of birth, the government had filed a juvenile information and proceeded within the time constraints imposed by the Act.

Further, the court determined that Doe would not be prejudiced by the delay. It noted that Silverman had agreed at the arraignment that the case was complex and that the time between the arraignment and the trial should be excluded. The court concluded that the juvenile information, since it essentially mirrored the original indictment, would have been no less complex, and there would be no reason to believe that Doe would not have consented to a similar delay had he been charged in a juvenile information at the outset. The court noted that this proposition was supported also by the fact that once Doe was charged as a juvenile he promptly waived his speedy trial right and indicated that if he were transferred to adult status, he

would demand yet an additional 30 days delay.

These factors, along with counsel's tactical decision to wait until 30 days had passed before bringing Doe's claim of juvenile status to the attention of the court and the fact that a dismissal would be with prejudice, persuaded the court that a dismissal because of delay would be contrary to the interest of justice.

Finally, for the reasons set out in greater detail in Part II.C. below, the court concluded that transfer of Doe to adult status would be in the interest of justice.

After entering its June 29 Order, the court reopened the hearing to permit the government to call BATF agent Kumor as a witness if it wished to rely at all on the proposition that on the date of arraignment Doe had said he was 12 or 13 years old when he left Vietnam. Kumor appeared as a witness and testified that Doe had made that statement to Kumor on October 18.

In addition, at that hearing, Silverman confirmed to the court that he had known of Doe's claim of juvenile status at the time of Doe's October 28 detention hearing. (Hearing Transcript, July 23, 1992, at 34 (Silverman met and spoke with Doe during last week of October); *id.* at 25 ("[W]hen I first met him, [he] advised me immediately that he was born in 1974.").) However, Silverman stated that he was not authorized by Doe to raise that claim before the court at that time and that Silverman himself had wanted to await further documentation before raising the issue. (*Id.* at 29.) The government suggested that Silverman had intentionally waited until the eve of trial to bring the matter to the court's attention in order to obtain a severance, and that he had admitted as much to the Assistant United States Attorney. Silverman responded, "what I said was, that sometimes you can win a severance motion through the back door because the front door is locked." (*Id.* at 31.)

The district court adhered to its decisions to transfer Doe to adult status and not to dismiss the case on speedy trial grounds. This appeal followed.

## II. DISCUSSION

Doe contends that the district court erred in finding (1) that his speedy trial rights under the Act were not violated; (2) that the United States Attorney for the Eastern District of New York was authorized to certify his case to the district court; and (3) that the transfer was in the interest of justice. For the reasons stated in the sections that follow, we disagree.

 Preliminarily, we note that, although the district court's order permitting the government to proceed against Doe as an adult is not a final judgment, it is an order that is immediately appealable under the collateral order doctrine established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). *See United States v. Juvenile Male # 1*, 47 F.3d 68, 70-71 (2d Cir.1995). In order to be appealable under that doctrine,

> an order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment."

*Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)). The third factor is present "only where the order at issue involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Midland Asphalt Corp. v. United States*, 489 U.S. at 799, 109 S.Ct. at 1498 (quoting *United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)).

 We have no doubt that all three factors are present here. A transfer order conclusively resolves the issue of whether the defendant is to be dealt with within the federal criminal justice system for adults or is instead to receive the benefits of being tried as a juvenile. That question is entirely separate from the issue of the defendant's guilt or innocence. The legal and practical benefits of being tried as a juvenile—which include pretrial detention in a foster home or community-based facility near the juvenile's home instead of in an adult prison, *see* 18 U.S.C. § 5035, and the sealing of records and the withholding of the juvenile's name and picture from the media, *see* 18 U.S.C. § 5038—would be destroyed if the defendant were forced to wait until after trial and a final judgment in order to appeal. We therefore conclude that an order transferring a juvenile to adult status for purposes of criminal proceedings is a final collateral order that is immediately appealable. *Accord United States v. One Juvenile Male*, 40 F.3d 841, 844 (6th Cir.1994); *United States v. A.R.*, 38 F.3d 699, 701 (3d Cir.1994); *United States v. Bilbo*, 19 F.3d 912, 914–15 (5th Cir.1994); *United States v. Gerald N.*, 900 F.2d 189, 190–91 (9th Cir.1990) (per curiam); *In re Sealed Case (Juvenile Transfer)*, 893 F.2d 363, 367–68 (D.C.Cir.1990); *United States v. Smith*, 851 F.2d 706, 708 (4th Cir.1988); *United States v. A.W.J.*, 804 F.2d 492, 492–93 (8th Cir.1986); *United States v. C.G.*, 736 F.2d 1474, 1476–77 (11th Cir.1984).

### A. Speedy Trial

 Under 18 U.S.C. § 5036, a juvenile who is being detained must be brought to trial "within thirty days from the date upon which such detention was begun" unless the "additional delay was caused by the juvenile or his counsel, or consented to by the juvenile and his counsel; or would be in the interest of justice in the particular case." The district court's findings as to factual matters such as consent must be upheld unless they are clearly erroneous. *See, e.g., United States v. Baker*, 10 F.3d 1374, 1397 (9th Cir.1993), *cert. denied*, ─── U.S. ───, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994); *see generally Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). The court's determination of whether a delay is in the interest of justice is reviewed for abuse of discretion. *See generally United States v. Marrero*, 705 F.2d 652, 656 n. 6 (2d Cir.1983) (matters such as whether "a miscarriage of justice" "would likely result" are questions neither of law nor fact, but rather call essentially for the exercise of sound judgment by the district judge,

and such decisions are therefore reviewed only for abuse of discretion).

 We see no error in the district court's finding that the delay between October 28 and December 10, 1991, was consented to by Doe and his counsel. The court's finding that Silverman knew enough to raise the question of Doe's juvenile status with the court no later than October 28 is amply supported by, *inter alia,* the government's letter to Silverman dated October 18, stating that on the day of arraignment Doe had claimed to have been born in 1974, by Silverman's admission that Doe made the same assertion when he first met Silverman, and by Silverman's statement that Doe would not authorize him to reveal his juvenile-status claim to the court on October 28. The court's rejection of Doe's speedy trial motion is sustainable on the basis of the consent finding alone. In addition, in the circumstances of this case, which include Doe's misrepresentations as to his age and identity, defense counsel's tactical delay in the interest of gaining a severance, and his extending that delay beyond 30 days in hopes of gaining a dismissal with prejudice, the district court properly excused the government's delay in the interest of justice.

## B. *Certification*

 The JDA provides, in part, that a juvenile "shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that ... the offense charged is a crime of violence." 18 U.S.C. § 5032. The Attorney General has delegated this certification authority to the United States Attorney for the district in which the offense is alleged to have occurred. *See United States v. Cuomo,* 525 F.2d 1285, 1289 (5th Cir.1976). Proper certification is a prerequisite to federal jurisdiction over juveniles. *See United States v. Wong,* 40 F.3d 1347, 1363 (2d Cir. 1994), *petition for cert. filed,* No. 94–7974 (Feb. 6, 1995). Doe argued in the district court that the certification here was improper because it was given by the United States Attorney for the Eastern District of New York, whereas the only crimes of violence

with which he is charged took place in the Southern District of New York and the Northern District of Georgia. Though the substantive RICO, robbery, and extortion offenses that Doe is alleged to have committed took place in Georgia and the Southern District of New York, Doe is also charged with participating in a RICO conspiracy that had its headquarters in the Eastern District of New York, and the district court ruled that that conspiracy qualified as a crime of violence. Doe argues that this was error and that a conspiracy cannot be a crime of violence because use of physical force is not a necessary element of a conspiracy. Though we would agree that not all conspiracies should be considered crimes of violence, the district court properly found the conspiracy alleged here to be a crime of violence.

 Since the JDA itself contains no definition of "crime of violence," the district court properly looked to the general definition provisions set out at the start of the Criminal Code. In general, a "crime of violence" is defined as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. While conspiracy is a separate crime from the substantive offense that is the coconspirators' goal, *see, e.g., United States v. Feola,* 420 U.S. 671, 693, 95 S.Ct. 1255, 1268, 43 L.Ed.2d 541 (1975); *Callanan v. United States,* 364 U.S. 587, 593, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961), the nature of the conspiracy's substantive objective may provide an indication as to whether the conspiracy creates the substantial risk that physical force against the person or property of another may be used in the offense. Conspiracies that may properly be deemed crimes of violence include those whose objectives are violent crimes or those whose members intend to use violent methods to achieve the conspiracy's goals. For example, the Eighth Circuit has concluded that a conspira-

cy to travel interstate in order to commit a murder is a crime of violence within the meaning of the JDA and 18 U.S.C. § 16. *See United States v. Juvenile Male,* 923 F.2d 614, 620 (8th Cir.1991). Similarly, this Court, in construing the nearly identical definition of "crime of violence" in the Bail Reform Act, 18 U.S.C. § 3141–3156 (1988), *see id.* § 3156(a)(4), held that a conspiracy to commit armed robbery is a crime of violence. *See United States v. Chimurenga,* 760 F.2d 400, 403–04 (2d Cir.1985); *id.* at 404 (noting "virtually identical language" in § 3156(a)(4) and § 16).

The district court's ruling was in accordance with this interpretation, and we see no error. The Eastern District conspiracy to commit robbery and extortion was properly considered a crime of violence. As a result, the United States Attorney for the Eastern District of New York was authorized to make the appropriate certification.

C. *Adult Status in the Interest of Justice*

■ The JDA provides that the district court may order the transfer of a juvenile to adult status only if it "finds, after hearing, such transfer would be in the interest of justice." 18 U.S.C. § 5032. In making this determination, the court is to consider six factors:

the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

*Id.* If the court has considered all of these factors, its decision to transfer a juvenile defendant to adult status is reviewable only for abuse of discretion. *See, e.g., United States v. Juvenile Male # 1,* 47 F.3d at 71; *United States v. One Juvenile Male,* 40 F.3d at 845; *United States v. Gerald N.,* 900 F.2d at 191.

■ In the present case, the district court found that most of the statutory factors weighed in favor of transferring Doe to adult

status. It found that Doe was approximately 16½ years old at the time of the Georgia jewelry store robbery and 17 at the time of the New York electronics firm extortions. And because Doe had continued to engage in acts involving BTK up to just a year short of his eighteenth birthday, the conduct with which he was charged did not occur either when he was very young or as an isolated indiscretion. The court therefore concluded that the age factor supported transfer.

As to Doe's social background, the court noted that when Doe emigrated to the United States, his mother had stayed in Vietnam. Prior to the time of the offenses charged in the present prosecution, Doe's father had filed a petition in family court for judicial supervision of Doe. And by the time of the offenses charged in the present case, Doe was completely estranged from his father, preferring the violent BTK gang over his biological family. After noting that Doe's mother had recently come from Vietnam and noting counsel's argument that Doe had had a reconciliation with his family, the court concluded that

[o]n balance, in view of [Doe's] long association with the Born to Kill, it seems that the social background that he lived in at that time was one that would be a factor weighing in favor of a transfer.

(June 1992 Tr. 22.)

With regard to the nature of the offenses involved, the district judge was in a particularly good position to make an assessment since she had presided over the trial of Doe's codefendants and had heard evidence of the workings of BTK, the details of the Georgia robbery, and the long period of extortions from the New York electronics firm. The trial evidence suggested that Doe had been a significant, trusted, and fairly active member of BTK; that he was an integral part of the plan to rob the Georgia jewelry store; and that on the night before the Georgia robbery, Doe shot at a nightclub doorman who resisted a BTK attempt to rob the club. The court rejected Doe's argument that his BTK role was minimal and found instead that the nature of the offenses with which he was

charged weighed in favor of his treatment as an adult.

The court found the extent and nature of Doe's prior delinquency record somewhat inconclusive, in that Doe had no convictions as a juvenile. The court noted, however, it could not be considered a plus that prior to the present charges Doe had been arrested in 1990 and 1991 in connection with BTK activity.

■ With respect to Doe's intellectual development and psychological maturity, the court stated that the court-appointed psychologist's evaluation was that Doe was above average in intelligence but was impulsive and immature. The court stated that Doe had nonetheless been able to function effectively in an organized gang and to live independent of his family in a very dangerous organization. The court concluded that Doe's "repeated criminal acts set forth in the juvenile information coupled with an above average intelligence, suggest[ ] in my analysis a streetwise individual who is not a likely candidate for rehabilitation." (June 1992 Tr. 27.)

The court found that Doe had not previously been placed in special treatment programs, but it doubted, in light of his lengthy allegiance to BTK, that he would accept newly imposed guidelines and behavioral modes. The court also found that there were no state treatment facilities of particular suitability for Doe.

In light of the foregoing findings, the court concluded:

> Having considered all, I believe, of the factors under the statute it's the Court's bottom conclusion that the interest of ... [j]ustice dictate[s] a transfer to adult status. These were extremely serious crimes committed by a young man of above average intelligence who had committed himself at the time to the activities[,] as I have said[,] of a very dangerous gang. I recognize, as I must, the rehabilitative ideal, but under all the circumstances it seems that there is not a great deal of hope of rehabilitation in this sense and when measured against the threat to society posed by this type of serious juvenile crime, I am per-

suaded that the transfer to the adult status is the appropriate resolution of this motion. (*Id.* 28–29.)

Doe challenges the district court's ruling on two grounds. First, he contends that the court should have required the government to establish the factors underlying its transfer motion by clear and convincing evidence, not merely by a preponderance of the evidence. Second, he contends that the court ignored the psychologist's observation that he was immature and that it improperly discounted the impact of his mother's arrival in the United States and the evidence that he had no prior juvenile delinquency record. We reject both contentions.

■ As to the quantum of proof needed to support a motion to transfer a juvenile to adult status, we reject the suggestion that the proper standard is clear and convincing evidence. A transfer hearing under the JDA is not a criminal proceeding designed to explore the defendant's guilt or innocence. That question is to be determined by means of the eventual trial, regardless of whether the court concludes that the defendant should be tried as an adult or as a juvenile. Nor does the hearing under the Act affect whether the defendant will be confined, either prior to or after trial. We thus consider the JDA proceedings to be quite different from proceedings in which the clear-and-convincing-evidence standard is appropriate, *see, e.g., Santosky v. Kramer,* 455 U.S. 745, 769, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982) (hearing to determine whether parental rights should be terminated because of parental neglect); *Addington v. Texas,* 441 U.S. 418, 433, 99 S.Ct. 1804, 1813, 60 L.Ed.2d 323 (1979) (hearing to determine whether defendant should be committed involuntarily to a mental hospital because he was mentally incompetent and a danger to himself or others). We conclude that with regard to the court's findings of fact, the preponderance standard was applicable. *Accord United States v. A.R.,* 38 F.3d at 703; *United States v. Parker,* 956 F.2d 169, 171 (8th Cir.1992).

Finally, Doe's contentions that the court ignored evaluations by the psychologist and improperly discounted the impact of his mother's arrival in the United States and the

evidence that he had no prior juvenile delinquency record, are unpersuasive. The court painstakingly addressed all of the statutory factors, and we see no indication that the court ignored any of the evidence. Doe's complaint goes to the weight the court chose to give the evidence bearing on certain of the factors. The court's balancing of the factors is reviewed only for abuse of discretion, and there was no abuse of discretion here.

## CONCLUSION

We have considered all of Doe's contentions on appeal and have found them to be without merit. The order of the district court is affirmed.