**UNITED STATES of America,**
**Plaintiff-Appellee,**
**v.**
**Gary Russell ESTEP,**
**Defendant-Appellant,**
**and**
**Pamela Rollins Estep,**
**Claimant-Appellant,**

**St. Paul Fire & Marine Insurance Company and Farmers & Merchants Bank of Crescent, Oklahoma, Appellees.**

**No. 84–1313.**

United States Court of Appeals,
Tenth Circuit.

April 29, 1985.

---

L. Patrice Latimer of L. Patrice Latimer Professional Corp., Oklahoma City, Okl., for defendant-appellant and claimant-appellant.

John E. Green, First Asst. U.S. Atty. (William Price, U.S. Atty., with him on brief), Oklahoma City, Okl., for plaintiff-appellee U.S. of America.

Tom E. Mullen of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for appellees St. Paul Fire & Marine Ins. Co. and Farmers & Merchants Bank of Crescent, Okl.

Before LOGAN and SETH, Circuit Judges, and SAFFELS, District Judge *.

---

* Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

SETH, Circuit Judge.

This case revolves around money, $10,-134 in cash, currently resting with the court in the Western District of Oklahoma. Appellant Pamela Jean Rollins turned over the money to an FBI agent, Cleo Fowler, during the course of Mr. Fowler's investigation of a bank burglary. Agent Fowler believed Pamela Rollins' friend, Gary Estep, "fished" the money from a night depository located at the Farmers & Merchants Bank in Crescent, Oklahoma. The government used the money, assorted $100, $50 and $1 bills, as evidence in a trial of Mr. Estep for bank burglary. A jury acquitted Mr. Estep.

Following the trial appellant Estep and Miss Rollins moved for return of the money. The St. Paul Fire & Marine Insurance Company also requested release of the money to it. The insurance company paid the Farmers & Merchants Bank for the loss and claims the money by right of subrogation.

After an evidentiary hearing the district court ordered the money released to the insurance company. The appellants appeal from this court order. They argue that the court improperly took judicial notice of all evidence introduced at the criminal trial. They also claim the court erred by finding the insurance company produced sufficient evidence of a better right to the money.

During the criminal trial facts relevant to the insurance company's claim were presented. On a Friday evening Mr. Clifford Mapes, a store owner in Crescent, Oklahoma, placed a money bag in the night depository of the Bank. He knew he began the business day with $10,400 in $100 and $50 bills. He kept large bills because many of his customers worked in the oil fields and bought items from his stores if he could cash their paychecks. Mr. Mapes testified that the stores took in an unknown number of large bills during the day. At the end of the day Mr. Mapes totaled his receipts of cash, checks and credit card receipts for deposit. The deposit bag contained $15,583.74. He did not separately total the cash, checks and credit card receipts. He estimated the total deposit other than cash to be between $3,000 and $4,000. He returned to the Bank on Monday and discovered that his deposit bag had disappeared.

FBI agent Cleo Fowler investigated the missing deposit. He talked with Pamela Rollins and her two sisters, Teresa Rollins and Loretta Adams, at Pamela Rollins' home. Agent Fowler focused his investigation on Mr. Estep. Loretta Adams and her husband had called the Crescent Police Department before the deposit theft and the Logan County Sheriff's office after the theft and informed both departments that Gary Estep was involved in the theft. Agent Fowler contacted Pamela Rollins because she held herself out as Mr. Estep's common-law wife at various times. The three sisters left agent Fowler in Pamela's house and returned with $10,134 in a brown paper bag. The money included 76 $100 bills, $2,450 in $50 bills and $84 in $1 bills. Teresa Rollins testified that Mr. Estep gave her the money to hold for Pamela. Teresa had placed it at a friend's house for safekeeping. Agent Fowler acknowledged the receipt of cash from Pamela in a handwritten document.

The insurance company argues that the money handed over to agent Fowler was money stolen from the Bank. The root of Pamela Rollins' claim to the money is her possession of the cash before it was given to agent Fowler. Mr. Estep states in his motion for return of the money that he was the "original bailee."

■ A judge presiding at a criminal proceeding has the power to return property held as evidence to its rightful owner. *United States v. LaFatch,* 565 F.2d 81 (6th Cir.); *United States v. Wilson,* 540 F.2d 1100 (D.C.Cir.); *United States v. Premises Known as 608 Taylor Avenue,* 584 F.2d 1297 (3d Cir.). This court agrees with other circuits which find subject matter jurisdiction proper because "[i]t makes for an economy of judicial effort to have the matter disposed of in the criminal proceeding by the judge that tried the case." *United*

*States v. Wilson,* 540 F.2d 1100, 1104 (D.C. Cir.).

■ Motions for return of property used as evidence in a criminal trial are normally filed under Rule 41(e) of the Federal Rules of Criminal Procedure. Appellants' motion invoked this rule. Rule 41(e) generally applies to property seized by the government either legally or illegally. *See United States v. Wilson,* 540 F.2d 1100, 1103 n. 4, quoting the American Law Institute Model Code of Pre-Arraignment Procedure § SS 280.3 (1975). We treat appellants' motion as a request for return of property voluntarily given for use as evidence in a criminal trial.

Appellants object to the procedure used by the trial judge at the evidentiary hearing. At the start of the hearing the trial judge stated, "I can take judicial notice of all of the evidence admitted into evidence in the trial of this case and do so." Record, Vol. IV at 18. The introduction of the trial evidence troubles appellants for two reasons. First, neither Miss Rollins nor her attorney were involved in or present at the criminal trial. Miss Rollins was financially unable to order a trial transcript. She complained to the trial court that the admission of trial evidence prejudiced her ability to rebut evidence relied upon by the insurance company. Second, appellants dispute the trial judge's authority under Rule 201 of the Federal Rules of Evidence to take judicial notice of the entire transcript. Appellants assert that judicial notice of trial evidence under these circumstances is reversible error. We disagree.

■ Judicial notice permits a judge to accept "a matter as proved without requiring the party to offer evidence of it." IX Wigmore on Evidence § 2565 (Chadbourn rev. 1981). Because a court so acts to remove a party's evidentiary burden the doctrine demands that a court only notice "matters that are verifiable with certainty." *St. Louis Baptist Temple v. F.D.I.C.,* 605 F.2d 1169, 1172 (10th Cir.). This court adopted the general rule that "[j]udicial notice is particularly applicable to the court's own records of prior litigation close-

ly related to the case before it." *Id.* We recognized in *Mansell v. Carroll,* 379 F.2d 682 (10th Cir.), that a judge looks to other court records in order to "pierce the formalities of all of the transactions in question." Although a court is not bound to notice other legal proceedings "[i]t is often done for a part of the record in the *same proceeding* or in a *prior stage of the same controversy.*" IX Wigmore on Evidence § 2579 (Chadbourn rev. 1981) (emphasis in original). The evidentiary hearing in the case before us springs from one controversy—the criminal trial of appellant Gary Estep. Motions for the return of property used as evidence in a criminal trial are procedurally a later stage of the same action. *See United States v. LaFatch,* 565 F.2d 81 (6th Cir.). It was clearly within the court's discretionary authority to judicially notice the trial transcript of the earlier portions of the same proceeding.

■ Appellants argue however that the judicial notice taken was an abuse of the court's discretionary power. Appellants' attorney and Pamela Rollins were not present at the criminal trial. Appellants argue that their attorney lacked an opportunity to hear the trial testimony and examine the full record. Therefore it is urged that appellants could not adequately rebut any evidence of the insurance company's entitlement based on the trial transcript.

We find no abuse of discretion. The trial court recognized appellants' dilemma at the start of the evidentiary hearing. The court gave appellants' present counsel ample opportunity to read the trial transcript. The court offered to reopen the proceedings if necessary: "[I]f you feel ... that a transcript should be provided and a further hearing should be forthcoming, then I will certainly entertain any application to that effect that you wish to file." Record, Vol. IV at 80. Appellants' attorney admitted at oral argument that one month passed from the date of the evidentiary hearing to the date the court's order was filed. The court gave appellants a fair chance to review the transcript. They were provided with

enough time to be familiar with it and to object with specificity to the admission of the trial record in whole or in part. We conclude that under these circumstances the court acted without error.

The remaining issue before this court is who presented a better claim of right to the money? Mr. Estep and Miss Rollins rest their claim on possession and control of the money before it was turned over to the court. The insurance company's claim depends on evidence presented at trial connecting Mr. Estep to the burglary. The trial court reasoned that Miss Rollins and Mr. Estep failed to make a prima facie case of entitlement to the funds.

■ In *United States v. Wright*, 610 F.2d 930 (D.C.Cir.), the court found "[t]he seizure of property *from someone* is *prima facie* evidence of that person's entitlement, particularly when the seized property is money—negotiable instruments difficult to identify and trace." *Id.* at 939 (emphasis in original). Bare possession is enough to establish some form of interest. *See Northern Pacific Railroad Co. v. Lewis*, 162 U.S. 366, 16 S.Ct. 831, 40 L.Ed. 1002.

The trial court concluded that Miss Rollins failed to prove a *prima facie* case because she had only "bare *momentary* possession" of the money, and apparently because of the inferences it drew from evidence as to how she came into possession if indeed she did.

There would seem to be a substantial question as to whether Pamela Rollins was the person who had "possession" of the money. It had been given by Mr. Estep to her sister Teresa who had hidden it in a friend's house or garage. The three sisters in response to the agent's interview went to the garage and returned with the money in the paper sack and it was given to the agent. He gave the receipt to Pamela. Pamela testified she did not have possession before going with her sisters.

■ Cases identify two methods of rebutting a possessory claim of ownership to money. An adverse claimant may prove ownership by positive identification of the money. *United States v. LaFatch*, 565 F.2d 81 (6th Cir.). He may also prove that the claimant in possession holds the money unlawfully. *City of Waco v. Bridges*, 710 F.2d 220 (5th Cir.); *United States v. Wright*, 610 F.2d 930, 939 n. 39 (D.C.Cir.).

■ The insurance company failed to prove a right to the money by identification alone. The parties stipulated that neither Mr. Mapes nor the Bank could identify the money as funds taken from them. Agent Fowler reported that the investigating agents performed no fingerprinting procedures on either the money or the Bank depository. However the district court found the money Pamela Rollins gave to agent Fowler "strikingly similar" to the money stolen from the Bank, but there was no evidence of the cash total in the deposit bag nor denominations of the bills. The claim of ownership by the Bank or insurance company cannot be based only on identification of the money, and at best only on an estimate of the total cash deposit compared to the total turned over to the agent. How the sister obtained the cash is significant.

The insurance company could also prove a right to the money by showing Mr. Estep and Miss Rollins held the money unlawfully. *See City of Waco v. Bridges*, 710 F.2d 220 (5th Cir.), and *United States v. Wright*, 610 F.2d 930, 939 n. 39 (D.C.Cir.). The appellee relies on circumstantial evidence connecting Mr. Estep with the depository theft and tracing money from Mr. Estep to Pamela in order to prove its claim under this theory. Appellant Estep's acquittal of the criminal charge does not preclude questioning his lawful possession of the money. *United States v. LaFatch*, 565 F.2d 81, 84 (6th Cir.). The trial court found in substance that neither individual claimant had lawful possession of the money.

Mike Adams, Pamela Rollins' brother-in-law, heard Mr. Estep say the Crescent Bank in El Reno, Oklahoma and a bank in Crescent, Oklahoma would be easy to "fish." Record, Vol. IV at 77, 78. Pamela Rollins' sister, Loretta Adams, remembered Gary Estep "brought up" the Crescent,

Oklahoma bank in a conversation. *Id.,* at 99. Mr. Adams said Gary Estep described a technique for "fishing out of a night deposit box." He also stated he saw fishing lines and hooks belonging to Mr. Estep. He "wasn't sure" Mr. Estep used the equipment to burglarize the depository. As mentioned, Pamela's sister Loretta and her husband had called the authorities both before and after the burglary to say that Gary Estep would be involved in the theft.

The trial court remarked that the demeanor of Pamela when she testified at the hearing was uncertain, hesitant and lacked conviction. Gary Estep argued that he was the "original bailee" and so entitled to the funds. He made no explanation at the hearing as to how he obtained the money. At the criminal trial the explanation was vague and unsubstantiated. The trial court found following the evidentiary hearing:

> "The standard of proof as to rightful ownership of the funds is a preponderance of the evidence. *United States v. LaFatch,* [565 F.2d 81, 83 (6th Cir.)].... The preponderance of the evidence before this Court is that the funds in question were stolen from the Bank and that St. Paul's is entitled to the funds by right of subrogation. While the jury failed to find that the evidence established the defendant's guilt beyond a reasonable doubt there was more than ample evidence to meet the preponderance of the evidence standard that the funds in question were stolen from the Bank's night depository by the defendant."

AFFIRMED.