## GOVERNMENT OF THE VIRGIN ISLANDS, IN THE INTEREST OF: M.B., a Minor, Appellant

No. 96-7077

United States Court of Appeals for the Third Circuit

August 8, 1997

CHARLOTTE POOLE DAVIS, ESQ., St. Thomas, U.S.V.I., *for Appellant*

JOEL H. FELD, ESQ., (Department of Justice), St. Thomas, U.S.V.I., *for Appellee*

SCIRICA, NYGAARD and McKEE, *Judges*

## OPINION OF THE COURT

McKEE

This is an appeal from an order of the District Court of the Virgin Islands affirming the Territorial Court's transfer of the prosecution of a minor, ("M.B.") from the Family Division to the Criminal Division of the Territorial Court to be tried as an adult. For the reasons that follow we find that the transfer to the jurisdiction of adult court was improper, and we will therefore vacate the transfer order and remand the matter for further proceedings consistent with this opinion.

## I. BACKGROUND AND PROCEDURAL HISTORY

Murray Callen was fatally shot on April 10, 1994. Thereafter, M.B., who was then 17 years old, was arrested and charged in connection with that shooting with acts of delinquency which would constitute first degree murder and unlawful possession of a firearm if committed by an adult. On May 9, 1994, M.B. appeared without counsel before a judge of the Family Division of the Territorial Court for a probable cause and "advice of rights" hearing on the juvenile matter. At that hearing the government introduced the affidavit of police corporal Roberto Lima, and also called Officer Lima to the witness stand. The evidence introduced was to the effect that a minor, G.C., had confessed to the shooting, identified M.B. by his nickname as having also participated in the shooting, and that M.B. had confessed. Lima testified that he was not the officer that took M.B.'s statement or advised M.B. of his rights. Instead, Lima based his testimony and affidavit on M.B.'s file and an interview that he had conducted with a "'concerned citizen,'" District Court Op. at 2-3 (hereinafter "D. Ct. Op."), who identified M.B. and G.C. as being involved in Callen's murder. Based on this evidence, the judge found probable cause to believe both that the charged acts of juvenile delinquency had been committed and that M.B. was one of the perpetrators.

On May 11, 1994, the government filed a juvenile complaint against M.B., and also moved to transfer M.B. from the Family Division to the Criminal Division of the Territorial Court for trial as adult. The police department and the department of human services ("DHS") filed reports with the court before the hearing as required by the transfer statute. *See* V.I. CODE ANN. Tit. 5, § 2509(e). The police report summarized the allegations against M.B. and G.C., and recommended transfer because of the serious nature of the crime. The DHS report assessed M.B.'s social history and the statutory factors that must be considered in deciding whether a minor should be transferred for trial as an adult. DHS reported that M.B. had no prior contact with the juvenile system, that he posed no threat to the community, and that he was a good candidate for rehabilitation. However, the report also noted that there were no programs or facilities for adequate rehabilitation available in the

Virgin Islands, and DHS recommended M.B.'s transfer into the adult justice system largely on that basis.

On July 1, 1994, a hearing was conducted to determine whether M.B. should be tried as an adult. The government established the minority of appellant by the testimony of an official from the office of vital statistics, who testified that M.B. had been born on May 12, 1976. The author of the DHS report, Vaughn Walwyn, also testified and was cross-examined about the statutory factors DHS is required to evaluate when the transfer of a minor to adult court is contemplated. The government did not call the author of the police report, Juvenile Officer Merlyn Wade, to testify but asked for the court to incorporate into the transfer hearing the facts adduced at the "advice" hearing and the court's findings regarding probable cause. The judge granted this request and took judicial notice of his earlier finding of probable cause. M.B. objected contending that he had not been represented by counsel at the initial hearing and that no cross-examination or other confrontation had occurred there.

On July 14, 1994, the Territorial Court made findings regarding each of the factors that must be considered in a discretionary transfer under 5 V.I. Code § 2509.[1] The court found that (1) the seriousness of the offense, (2) the aggressive, violent and premed-

---

[1] That statute requires a court to consider the following factors when determining whether to transfer:

(1) the seriousness of the alleged offense to the community and whether the protection of the community requires waiver;

(2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

(3) whether the alleged offense was against property, greater weight being given to offenses against persons, especially if personal injury resulted;

(4) whether there is probable cause to believe that the offense charged has been committed and that the child has committed it;

(5) the sophistication and maturity of the child as determined by consideration of his home, emotional attitude and pattern of living;

(6) the record and previous history of the juvenile . . .;

(7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child, if found to have committed the alleged offenses.

5 V.I. Code § 2509(d).

itated manner in which the offenses were committed, (3) the fact that the offense was against persons, rather than property, and resulted in death, (4) the existence of probable cause to believe the offenses were committed by M.B., and (5) the minor's maturity level all weighed in favor of transfer. Although the court found that M.B.'s lack of earlier contact with the juvenile court system weighed against transfer (the sixth factor under the statute), and although M.B. was a "good candidate" for rehabilitation, his age of seventeen at the time of the crime and eighteen at the time of the hearing simply did not leave enough time for rehabilitation in the juvenile system, which would have to release him on his nineteenth birthday. Thus, the court did not find this factor to weigh against transfer. Accordingly, on July 14, 1994, the Territorial Court issued an order transferring M.B. to be tried as an adult for murder in the first degree and robbery.[2] This order was affirmed by the district court, and the instant appeal followed.

M.B.'s primary argument is that his due process rights were violated at the transfer hearing by the Territorial Court's reliance on its earlier probable cause findings at the "advice of rights" hearing, where M.B. was not represented by counsel. M.B. also argues that the trial court abused its discretion when it found that he posed a threat to the community and was subject to transfer on the ground that there was not sufficient time in the juvenile system for rehabilitation of a minor. However, because we find that the procedure used to transfer M.B. to the jurisdiction of the adult court was improper, we need not reach the remaining issues raised in this appeal.

## II. JURISDICTION

■ This court has jurisdiction pursuant to the collateral order exception to the final judgment rule. 28 U.S.C. § 1291. *See Gov't of the Virgin Islands in the Interest of A.M., a Minor*, 34 F.3d 153 (3d Cir. 1994) (holding transfer orders fall within collateral order doctrine).

---

[2] The actual order does not say that M.B. was transferred for unlawful possession of a firearm, though such offense was mentioned in the court's listing of the factors that weighed in favor of transfer.

## III. STANDARD OF REVIEW

■ *In United States v. A.R.*, 38 F.3d 699, 701-02 (3d Cir. 1994), we held that "because the decision to transfer a juvenile for prosecution as an adult is committed to the sound discretion of the trial court, we review that decision only for an abuse of discretion." However, we have plenary review of any constitutional claims or other questions of law. *Id.* at 702.

## IV. DISCUSSION

■ M.B. argues that the Territorial Court's reliance on the probable cause findings made at the "advice of rights" hearing violated his right to counsel because he was unrepresented at the "advice" hearing and that the procedure denied him his right to cross-examine the government witness testifying at the advice of rights hearing.[3]

As noted earlier, during the transfer hearing the Territorial Court merely took judicial notice of its previous finding of probable cause, stating that "the Court has already conducted a probable cause hearing and has found there is probable cause." Tr. at 4-5. Similarly, in a later colloquy, the court stated

> The Court has been asked to take judicial notice of its records and the records indicated that this Court has already found probable cause to believe that this crime of murder in the first degree and attempted robbery have been committed and found probable cause that it is likely that this minor participated in that criminal venture. Probable cause has been found already ....

---

[3]M.B. also argues that reliance on the prior finding violated his privilege against self-incrimination because he was not advised of his Miranda rights until after the hearing was over. However, M.B. does not point to any statement he seeks to keep out of evidence. As this Court noted in A.R., the purpose of the privilege is to protect "disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used. . . . [Thus,] the focus [is on] the nature of the statement or admission and the exposure which it invites." 38 F.3d at 702. Thus, because M.B. asserts no statement that he wishes to protect, no Fifth Amendment issue arises.

Tr. 66. It is undisputed that M.B. was unrepresented by counsel at the advice of rights hearing when Officer Lima offered the testimony that was the basis for the finding of probable cause.

■ *In Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966), the Supreme Court held that before a juvenile could be transferred to adult criminal court, the juvenile was entitled to a hearing to determine whether transfer was appropriate and that the hearing must measure up to the essentials of due process. While the Court did not delineate the minimum constitutional requirements for the hearing, *cf. In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967) (proceeding where "delinquency" of juvenile is being determined and where juvenile may suffer loss of liberty, juvenile has right to timely notice of charges, right to counsel, privilege against self-incrimination, right to cross-examination), it is clear that sufficient procedural protection must be afforded to comport with the concept of fundamental fairness and due process, and that includes the juvenile's right to be represented by counsel at a transfer hearing.

*In United States v. A.R.*, 38 F.3d 699 (3d Cir. 1994), we addressed whether the nature of a psychiatric evaluation is such a "critical stage of the proceedings" that a juvenile is entitled to have counsel present for the evaluation. We held that there was no such right because the limited, neutral purpose of the psychiatric evaluation and the use to which it was put did not implicate the factors necessary for such a right to attach.[4] *Id.* at 704. However, we stressed that the right to counsel did attach at the transfer hearing where the report would be used as evidence. "At the transfer hearing, where a determination is actually made as to the juvenile's status, a juvenile has the right to counsel as well as the

---

[4] A.R. looked to "three factors by which to measure whether a given proceeding is a 'critical stage' such that the right to counsel attaches:

First, if failure to pursue strategies or remedies results in a loss of significant rights, then Sixth Amendment protections attach. Second, where skilled counsel would be useful in helping the accused understand the legal confrontation . . . a critical stage exists. Third, the right to counsel applies if the proceeding tests the merits of the accused's case.

*A.R.*, 38 F.3d at 704 (*quoting Menefield v. Borg*, 881 F.2d 696, 698-99 (9th Cir. 1989)).

opportunity to attack the methods employed and conclusions reached by the person who conducted the evaluation". *Id.* at 705.

In the instant case, the juvenile court judge at the transfer hearing was obligated to determine "whether there was probable cause to believe that the offense . . . had been committed and [whether M.B.] had committed it" as part of the transfer proceeding. 5 V.I. Code § 2509(4). Thus, M.B. was entitled to representation of counsel when that determination was made. The procedure that the court adopted deprived M.B. of that right because it substituted a finding that should have been made while M.B. was represented by counsel with a finding that was made at a prior proceeding when he was unrepresented. We will not eviscerate the right to counsel by ratifying such a procedure. "The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is of the essence of justice." *Kent* 383 U.S. at 561.

In *Pointer v. Texas*, 380 U.S. 400, 407, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965), the Supreme Court held that a defendant's right to representation by counsel was violated when a transcript from a preliminary hearing during which he was unrepresented was introduced into evidence at a criminal trial. The same malady infects the procedure that was used to transfer M.B. to adult court. Under the circumstances here, we can perceive no basis for distinguishing between a criminal trial and a transfer hearing with regard to right of counsel. We conclude that the Territorial Court's use of the prior probable cause finding, made without representation by counsel violates M.B.'s due process rights.[5]

· The government cites *United States v. Estep*, 760 F.2d 1060 (10th Cir. 1985) and United States v. Parker, 956 F.2d 169 (8th Cir. 1992) as examples of the procedure that was used here being upheld.

---

[5] Although M.B.'s right to counsel may also have been violated at the initial advice of rights/probable causes hearing, *see Moore v. Illinois*, 434 U.S. 220, 228, 54 L. Ed. 2d 424, 98 S. Ct. 458 (1977) (right to counsel attaches at preliminary hearing because such hearing is "critical stage" in prosecutorial proceedings); *Coleman v. Alabama*, 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970) (same), this issue is not directly before this court. Because the transfer order is appealable at this juncture only under the collateral order doctrine, the issue of whether M.B.'s rights were violated at the advice of rights hearing is addressed only to the extent that it affected his rights in the transfer determination. *See A.M.*, 34 F.3d at 158 ("the sole question that we may consider at this time under the collateral order doctrine concerns A.M.'s transfer for prosecution as an adult").

Appellee's Dr. at 13. In *Parker*, the defendant argued that the court erred by incorporating the transcript of a prior transfer hearing into the transfer hearing that was held upon remand. The case had been remanded following the appellate court's determination that the transfer court had originally been without jurisdiction because of a failure to comply with jurisdictional prerequisites to transfer. On appeal from the second transfer hearing the Court of Appeals for the Eighth Circuit did uphold the district court's incorporation of the transcript from the first hearing into the second one, but it did so under facts which only confirm that an infirmity exists here. The court there noted that the same judge had presided at both proceedings, but the court went on to state "we note that P.P. was represented by counsel at the [earlier] hearing and had an opportunity to cross-examine the government's witnesses; he was represented by the same counsel [at the later hearing]." 956 F.2d at 171.

The facts in Estep are inapposite to the circumstances here. In *Estep*, an individual (Rollins) had turned some money over to the FBI. The government later alleged that the money had been "fished" from a night depository by an individual named Fowler who was a friend of Rollins. Fowler was acquitted in a trial for bank burglary, and Rollins and the bank's insurance company both moved for return of the money following Fowler's trial. Following an evidentiary hearing at which the court took judicial notice of the transcript of Fowler's criminal trial, the court ordered the money released to the insurance company. Rollins then appealed arguing that the court had erred by taking judicial notice of the trial transcript because neither she nor her attorney had been involved. The Court of Appeals for the Tenth Circuit denied her objections and affirmed the district court's procedure. However, the court noted "the trial court recognized appellants' dilemma at the start of the evidentiary hearing. . . . The court offered to reopen the record if necessary" and to take other steps to allow present counsel an opportunity to develop the record. 760 F.2d at 1063. More importantly, however, Estep does not even involve the right to counsel of an accused. The civil dispute over money in Estep can hardly be compared to the "critical stage" in the criminal prosecution of M.B.

■ The district court hearing M.B.'s initial appeal from the transfer order suggested that even if there was a violation of M.B.'s right to counsel, such violation was harmless. First, we note that certain constitutional violations, such as deprivation of the right to counsel, constitute "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error standards.'" *Arizona v. Fulminante*, 499 U.S. 279, 307, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991). Thus, it is doubtful that a harmless error analysis is appropriate for right to counsel violations at a transfer proceeding. Further, even if such analysis were applicable it could not be said that the violation here was harmless. The district court indicated that the Territorial Court's finding of probable cause was permissible because that court relied both on its previous finding of probable cause and the police summary that the government submitted at the transfer hearing. However, as the above-quoted portions of the transcript indicate, *supra* at 7, the Territorial Court understood itself to be relying on the earlier finding made at the advice hearing. Further, while the district court also suggested that the violation was harmless because the author of the police report, Officer Merlyn Wade, was available for questioning, a reading of the transcript indicates that Wade was not available, but that a different officer, Officer Rhymer, Tr. at 61, was made available for questioning. Finally, there is no suggestion that Officer Lima, who gave supplementary testimony at the advice hearing, was available for questioning at the transfer hearing. Thus, we cannot agree with the district court's suggestion that violation of his right to counsel was harmless.

The district court also suggested that M.B. "waived" any violation because he never availed himself of the opportunity to call Officer Wade. However, as already explained, Officer Wade was not at the hearing to be called. Nor does it appear that Officer Lima was available for questioning at the transfer hearing. Finally, the record is replete with M.B.'s objections to the procedure used. Thus, no "waiver" of his right to counsel can be found on this

record.[6] Accordingly, we will reverse the order transferring M.B. to adult court and remand for further proceedings.

## IV. PROCEDURE ON REMAND

■ As noted above, the record here establishes that M.B. was born on May 12, 1976. Therefore, when this case was argued to this court he was 20, and he is now 21 years old and beyond the age that would allow the Family Court division of the Territorial Court to have any jurisdiction over him. *See* V.I. CODE ANN. Tit. 4, Ch. 11, § 172(a) ("When jurisdiction shall have been obtained by the Family Division in the case of any child, such jurisdiction may be retained by the Division until he becomes 19 years of age, unless he is discharged prior thereto by the court"). Accordingly, the situation we are confronted with is analogous to that which confronted the Supreme Court in Kent. There, the defendant had passed the age at which the juvenile court could exercise jurisdiction over him when the Court vacated the order transferring him to adult court. It was therefore not possible to simply remand to juvenile court for a redetermination of the propriety of the transfer to adult court. However, rather than dismiss the matter and create the possibility that a very serious crime would go unpunished, the Court remanded to the adult court for a de novo hearing on transfer ("waiver" of juvenile jurisdiction). The Court stated:

> Ordinarily we would reverse the Court of Appeals and direct the District Court to remand the case to the Juvenile Court for a new determination of waiver. If on remand the decision were against waiver, the indictment in the District Court would be dismissed. However, petitioner has now passed the age of 21 and the Juvenile Court can no longer exercise jurisdiction over him. In view of the unavailability of a redetermination of the waiver question in the Juvenile Court, . . . we vacate the order of the Court of Appeals and the judgment of the District Court and remand the case to the District Court for a hearing de novo on waiver, consistent with this opinion. If that court

---

[6] Because we reverse, we need not reach M.B.'s claim that the Territorial Court erred in denying him sufficient time to examine the police and DHS reports in order to prepare for the transfer hearing.

finds that waiver was inappropriate, petitioner's conviction must be vacated. If, however, it finds that the waiver order was proper when originally made, the District Court may proceed, after consideration of such motions as counsel may make and such further proceedings, if any, as may be warranted, to enter an appropriate judgment.

*Kent*, 383 U.S. at 564. Similarly, we shall vacate the order of the district court affirming the order of the Family Division of the Territorial Court transferring jurisdiction of M.B., and remand the matter to the Criminal Division of the Territorial Court for a de novo transfer determination.[7] If that court concludes that transfer is appropriate it may then proceed with the prosecution of M.B. giving full consideration to any motions, and such other proceedings as it may deem appropriate. If the Criminal Division of the Territorial Court concludes that the matter is not appropriate for transfer, it shall enter an order dismissing the charges against M.B.

## CONCLUSION

For the foregoing reasons, we will reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## JUDGMENT

This cause came on to be heard on the record from the District Court of the Virgin Islands and was argued by counsel on December 10, 1996.

On consideration whereof, it is now here ordered and adjudged by this Court that the judgment of the said District Court entered December 8, 1995, be, and the same is hereby reversed and the cause is remanded for further proceedings consistent with the opinion of this Court. All of the above in accordance with the opinion of this Court.

DATED: August 8, 1997

---

[7] Although it is sometimes our practice to remand to the district court with instructions that it, in turn, further remand to the court where proceedings will continue, we see no need to do so here.