**GOVERNMENT OF THE VIRGIN ISLANDS in the Interest of A.I.E., Minor/Appellant.**

**Government of the Virgin Islands in the Interest of O.B., Minor/Appellant.**

**Nos. 1997–85, 1997–86.**

District Court, Virgin Islands,
Appellate Division,
D. St. Thomas.

Nov. 1, 2000.

James M. Derr, St. Thomas, VI, for minor/appellant A.I.E.

Leslie L. Payton, Territorial Public Defender, St. Thomas, VI, for minor/appellant O.B.

Maureen Phelan Cormier, Assistant Attorney General, Virgin Islands Department of Justice, St. Thomas, VI, for appellee.

BEFORE: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, District Judge of the District Court of the Virgin Islands; and ALPHONSO G. ANDREWS, JR., Territorial Court Judge, Division of St. Croix, Sitting by Designation.

## MEMORANDUM OPINION

PER CURIAM.

## I. INTRODUCTION

This appeal challenges the validity of the Territorial Court's decision to transfer juvenile appellant A.I.E. and juvenile appellant O.B. to the criminal division of the Territorial Court. Both appellants were charged with acts of juvenile delinquency which, if committed by an adult, would have constituted the felony of first degree murder, subjecting A.I.E. and O.B. to the mandatory transfer provisions set forth in V.I.CODE ANN. tit. 5, § 2508(b)(4). For the reasons set forth below, the Court will affirm the order transferring A.I.E. to the Criminal Division of the Territorial Court and will vacate the order transferring O.B. to the Criminal Division.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 1997, the Government of the Virgin Islands ["government"] filed a juvenile complaint in the Family Division of the Territorial Court charging both A.I.E. and O.B. with first degree murder, 14 V.I.C. § 922(a)(2), first degree robbery, 14 V.I.C. § 1862(1), aiding and abetting, 14 V.I.C. § 11(a), and conspiracy, 14 V.I.C. §§ 551(1), 1863(1). These charges arose out of an incident in which A.I.E., O.B., two other juveniles, and one adult allegedly robbed a group of Danish tourists near an automated teller machine located along the waterfront in St. Thomas. A.I.E., O.B., and the others purportedly approached from behind four Danish tourists as they walked along a sidewalk. A.I.E. allegedly commenced the crime by snatching a purse from the arm of one of the female tourists. The tourists confronted the attackers and one tourist, later identified as Gravers Hendricksen, chased after A.I.E. and the others. O.B. is alleged to have picked up a piece of wood and used it to assault Mr. Hendricksen. O.B. is alleged to have repeatedly hit Mr. Hendricksen in the head as he lay on the ground while the other assailants robbed Mr. Hendricksen of his wallet. Mr. Hendricksen later died from his injuries.

Following the appellants' arrests and after advising the appellants of their rights, the Territorial Court conducted a detention hearing.[1] At the conclusion of the

---

1. The Territorial Court was required by 5 V.I.C. § 2516 to hold a detention hearing "no later than forty-eight hours, excluding Sundays, after the child is placed in detention."

hearing, the court detained both appellants, finding probable cause to believe the appellants committed the acts with which they were charged and that the other prerequisites of 5 V.I.C. § 2514 had been satisfied.

The government subsequently filed a motion to transfer both appellants to the jurisdiction of the criminal division. (App. at 26, 90.) In accordance with 5 V.I.C. § 2509, the court conducted a transfer hearing with A.I.E. and O.B.[2] and their respective attorneys in attendance. The court appointed private counsel to represent A.I.E. and the Territorial Public Defender to represent O.B. During the course of the transfer hearing, the judge heard evidence addressing the respective ages of the appellants from A.I.E.'s mother, (*id.* at 300–01), O.B.'s mother, (*id.* at 302–03), and Officer Manuel James, (*id.* at 298–99). The combined testimony of these witnesses indicated that both A.I.E. and O.B. were older than fourteen but below the majority age of eighteen at the time of the incident.

The government's only other witness was Sergeant Reynold S. Fraser, who was assigned to the Homicide Task Force of the Virgin Islands Police Department at the time of the incident. (*See id.* at 253–96.) Sergeant Fraser related the series of events which led up to the death of Mr. Hendricksen and testified that the police investigation showed that A.I.E., O.B., and three others had been the perpetrators of the crime. (*Id.* at 255–59.) Sergeant Fraser stated that an eyewitness told the police who committed the crime, identifying A.I.E., O.B., and the other alleged assail-

ants by name. (*Id.* at 259.) Fraser also indicated that the eyewitness knew A.I.E., O.B., and the other alleged perpetrators, and was one of "their associates." (*Id.* at 268–69.) Further, the eyewitness told police the name of A.I.E.'s mother. (*Id.* at 270.) The government did not provide any information concerning the identity of the eyewitness nor did the court inquire into the eyewitness' basis of his knowledge of the alleged acts of A.I.E., O.B., and the others.[3]

Under cross examination, Fraser conceded that none of the victims positively identified either A.I.E. or O.B. (*Id.* at 262.) The victims did provide the following descriptions of their assailants: at least three of the assailants were wearing dark-colored pants, either dark blue or black pants, (*id.* at 264); one of the assailants was a dark male, about thirty-five years old, approximately 5'6″ tall, of slender build with hair braided in small plats not locks, (*id.* at 263); and one of the other assailants "was clear, and looked very young" with a "low haircut," (*id.* at 264). The victims did not give any other information "concerning either the clothing, physical characteristics, or any other identifying characteristics of the assailants." (*Id.* at 265.) Fraser testified, however, that one of the physical descriptions matched A.I.E., in that A.I.E. could be described as "clear, medium build, low haircut" with braided hair. (*Id.* at 267–69.) Although Sergeant Fraser denied that the statements of the eyewitness provided the sole basis for the identification of O.B., he did not specifically identify any

---

(*See* Appendix ["App."] at 127 (Transcript of Advise of Rights H'rng).) Although we appreciate the trial judge's observation that his docket simply did not allow for the hearing to take place within the proscribed time limit, the statute leaves no room for such discretion.

**2.** The Territorial Court also conducted hearings concerning a third juvenile, E.C., and issued an order transferring E.C. to the criminal division for further proceedings. E.C., however, did not appeal the transfer order.

**3.** At the detention hearing, the court did not allow counsel for the appellants to inquire as to the eyewitness' identity, including the eyewitness' age and prior police contact, if any. (App. at 152–53, 166, 172.) The government successfully argued that the eyewitness' identity must remain confidential because this witness allegedly had been threatened six days after the incident by O.B., another juvenile, and the adult involved in the crime. (*Id.* at 149.)

description offered by the victims which matched O.B. (*Id.* at 284–88.)

The surviving victims did confirm the series of events as outlined by the eyewitness, including that several males had approached the group from behind, that one assailant had grabbed one of the female victim's purse, that Mr. Hendriksen had given chase, and that the assailants then attacked Mr. Hendriksen, beating him with a wooden stick and stealing his wallet while he lay on the ground.

The court found that A.I.E. and O.B. were fourteen years of age or older at the time of the crime and were charged with an act of juvenile delinquency which would constitute the crime of first degree murder if committed by an adult. Furthermore, the judge found probable cause that A.I.E. and O.B. committed this crime. The court relied solely on the allegations of the eyewitness as conveyed by Sergeant Fraser during the transfer hearing.[4] (*Id.* at 315–19.) Based on these findings, the court transferred both A.I.E. and O.B. to the Criminal Division of the Territorial Court to be tried as adults. (*Id.* at 58–61 (transfer order for A.I.E.), 110–13 (transfer order for O.B.).) The appellants timely appealed their respective transfer orders.

## III. DISCUSSION

### A. Jurisdiction and Standard of Review

■ The Appellate Division has jurisdiction to review the judgments and orders of the Territorial Court in all juvenile cases. 4 V.I.C. § 33. The Court has judicially narrowed application of this jurisdiction to include only final judgments and orders. *Government of the Virgin Islands in the Interest of A.M.*, 34 F.3d 153, 156 n. 3 (3d Cir.1994). A juvenile transfer order

is considered a final appealable order. *See id.* at 156.

■ The Court will uphold findings of fact unless clearly erroneous. 4 V.I.C. § 33. Although the decision to transfer a juvenile to the Criminal Division is " 'committed to the sound discretion of the trial court' " and generally can be reviewed only for abuse of that discretion, the Appellate Division exercises plenary review over any constitutional claims or other questions of law. *Government of the Virgin Islands in the Interest of M.B.*, 122 F.3d 164, 167 (3d Cir.1997) (quoting *United States v. A.R.*, 38 F.3d 699, 701–02 (3d Cir.1994)).

### B. Violation of Appellant O.B.'s Sixth Amendment Right to Effective Assistance of Counsel

■ The protections of the Sixth Amendment of the Constitution, including the guaranteed right to counsel, form the bedrock of a just and fair criminal proceeding. *See Kent v. United States*, 383 U.S. 541, 561, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) ("The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is the essence of justice."); *see also Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial.") A juvenile similarly enjoys the right to counsel guaranteed by the Sixth Amendment during transfer hearing proceedings. *Kent*, 383 U.S. at 554, 86 S.Ct. 1045 ("[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony—. . . without effective assistance of counsel . . . ."); *M.B.*, 122 F.3d at 168 ("[W]e can

---

4. The Court notes that the court relied on evidence introduced at the detention hearing that was not reintroduced at the transfer hearing. Specifically, the court referred to assertions that the eyewitness was with A.I.E., O.B., and the other alleged assailants before the crime and overheard the appellants and the others discussing their plan to commit the

crime. (App. at 315.) Although neither A.I.E. or O.B. raised any questions on this issue, the Court finds that since both A.I.E. and O.B. were represented by counsel at the detention hearing, the concerns of *Government of the Virgin Islands in the Interest of M.B.*, 122 F.3d 164 (3d Cir.1997), are not implicated.

perceive no basis for distinguishing between a criminal trial and a transfer hearing with regard to right of counsel.").

■ This right to counsel is comprised of two components: the right to reasonably competent counsel and the right to counsel's "undivided loyalty." *Government of the Virgin Islands v. Zepp*, 748 F.2d 125, 130 (3d Cir.1984). "Counsel ... has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. In so doing, counsel has an obligation to avoid conflicts of interest which would necessarily impede his ability to effectively represent his client and would frustrate the "proper functioning of the adversarial process." *Zepp*, 748 F.2d at 131.

■ An Assistant Territorial Public Defender represented appellant O.B. at all of O.B.'s appearances before the Family Division of the Territorial Court, including at the transfer hearing proceedings. The Territorial Public Defender's Office also represented, in two other ongoing although unrelated matters, the eyewitness who provided crucial information to the police identifying O.B. as one of the assailants who attacked the Danish tourists. The government brought this fact to the attention of the court at the initial hearing by both a written and oral motion to remove the Territorial Public Defender from representing O.B. The Assistant Attorney General advised the judge that "[i]n terms of that particular witness, Your Honor, it will be a conflict with the Public Defender's Office. I am not naming the particular witness, but I know I can say it will be a conflict with the Public Defender's Office." (App. at 133.) In response to the court's questions, the Assistant Public Defender informed the court that one other case involving the eyewitness against O.B. was ongoing and another case was up for review, and the Territorial Public Defender represented the eyewitness in both cases. (*Id.* at 134.) The judge did not

immediately relieve the Territorial Public Defender as counsel for O.B., but merely observed that "as long as we are using the Public Defender for so many, so many cases, there will be some conflicts every now and then" and took the matter under advisement. (*Id.*) Thus, the Assistant Public Defender continued to represent O.B. through the conclusion of the transfer proceedings. As far as we can determine from the record, the Family Division judge did not ever make a finding regarding the conflict of interest.

■ Once the trial court has been made aware of a potential conflict of interest, the judge must conduct an inquiry into the alleged conflict to determine if a conflict in fact exists and, if so, determine on the record whether the defendant has knowingly and affirmatively waived his constitutional right to the " 'untrammeled and unimpaired' assistance of counsel for his defense." *Government of the Virgin Islands v. John*, 447 F.2d 69, 74 (3d Cir. 1971) (quoting *Glasser v. United States*, 315 U.S. 60, 62, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). Here, the judge made no inquiry of O.B. about his willingness to waive his right to independent counsel, even after the *government* informed the court of the Territorial Public Defender's obvious conflict of interest. As stated succinctly in *Government of the Virgin Islands v. Zepp*, the Family Division judge "was put on notice of the conflict and made no I determination as to whether [O.B.] fully understood the nature of the conflict, did not seek an intelligent and competent waiver, and did not disqualify [the Territorial Public Defender]." 748 F.2d at 139.

It is perhaps not surprising that O.B. did not raise on appeal the trial judge's clear abuse of discretion resulting from his failure to relieve counsel due to this blatant conflict of interest. The Territorial Public Defender continued to represent O.B. through the filing of the briefs in this

appeal.[5] We have no difficulty, however, in concluding that the circumstances surrounding O.B.'s legal representation at the transfer hearing satisfy a finding of plain error. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (plain error under Rule 52(b) of the Federal Rules of Criminal Procedure exists where a legal rule has been violated without a valid waiver by the defendant, the error was clear or obvious and must have affected substantial rights of the defendant); *see also Sanchez v. Government of the Virgin Islands,* 34 V.I. 105, 109, 921 F.Supp. 297, 300 (D.V.I.1996) (defining plain error as those errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings" and finding that "[t]he doctrine is to be used sparingly and only where the error was sure to have had an unfair 'prejudicial impact' ").

First, the government brought the obvious conflict to the court's attention, and O.B.'s counsel confirmed it. Second, O.B. did not knowingly and affirmatively waive his right to the undivided loyalty of his counsel, even if it could be waived. Third, this conflict of interest is presumed to have impaired and prejudiced O.B.'s Sixth Amendment right to counsel. *See Zepp,* 748 F.2d at 139 ("Having determined that an actual conflict of interest exists on this record, we hold that it was not incumbent upon the defendant to show actual prejudice but prejudice may be presumed from the surrounding circumstances."). Accordingly, the Court will vacate the order transferring O.B. to the jurisdiction of the Criminal Division because he was denied the right to effective assistance of counsel at the transfer hearing.[6]

## C. The Territorial Court Correctly Found Probable Cause to Support the Mandatory Transfer of A.I.E. to the Criminal Division

The Virgin Islands Code provides for the mandatory transfer to the Criminal Division of a juvenile aged fourteen years or older who is charged with acts that would constitute one of several felonies if committed by an adult. *See* 5 V.I.C. § 2508(b)(4). The list of felonies giving rise to a mandatory transfer includes murder in the first degree. *See id.* If the Family Division finds that a juvenile was fourteen years or older at the time of allegedly committing what would be first degree murder if committed by an adult, the court upon a determination of probable cause must transfer the juvenile to the Criminal Division where he will be tried as an adult. While A.I.E. does not dispute the finding that he was at least fourteen years of age when he allegedly committed an act that would be the crime of first degree murder if committed by an adult, he does challenge the trial judge's finding of probable cause that he did the act. He argues that the government failed to establish the veracity of the eyewitness' allegations or to corroborate those allegations.

■ In reviewing a determination of probable cause, we must look to the totality of the circumstances. *See Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This standard of review does not change when the government relies on the statements of a confidential informant, in this instance identified as the "eyewitness," to establish probable cause.[7] The Territorial Court's

---

**5.** The Criminal Division of the Territorial Court has since relieved the Territorial Public Defender from further representation of O.B. and appointed private counsel in its place. (Order of June 30, 1997), *Government of the Virgin Islands v. O.B.,* Crim. No. F250/97 (Terr.Ct. St. Thomas & St. John Div.).

**6.** O.B. also challenged the trial court's determination of probable cause. Because the Court has determined that O.B.'s Sixth

Amendment right to counsel was violated and the transfer order must be vacated, it does not reach the remaining issues raised by O.B.

**7.** In *Illinois v. Gates,* the Supreme Court abandoned what it termed the "rigid" two-pronged test enunciated in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), which had been adopted to evaluate probable

task in finding probable cause to transfer A.I.E. was "simply to make a practical, commonsense decision whether, given all the circumstances set forth in the [evidence] before [the court], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that" A.I.E. committed the alleged act. *Id.* at 238–39, 103 S.Ct. 2317. Our burden in reviewing the determination of probable cause is "simply to ensure that the [trial judge] had a 'substantial basis for ... clud[ing]" that probable cause existed.'" *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).

█ Contrary to the repeated assertions of the government at the transfer hearing, the mere "fact you have an eyewitness who knows them personally and has identified them personally as being the perpetrator" is *not* sufficient to establish probable cause that A.I.E. committed the alleged crime. (App. at 274.); *see also Gates*, 462 U.S. at 227, 103 S.Ct. 2317 (An anonymous tip letter standing alone "would not provide the basis for a ... determination that there was probable cause."). The record, however, indicates that there was more than just the assertions of the eyewitness to support the trial court's finding of probable cause.

As noted *supra*, the eyewitness' identification of A.I.E. as one of the assailants was corroborated by one of the physical descriptions given by the surviving victims. Specifically, the victims described one assailant as "clear, and looked very young" with a "low haircut." (App. at 264.) Sergeant Fraser told the court that this description matched that of A.I.E. (*Id.* at 267–69.) Furthermore, the victims' statements corroborated the eyewitness' statements concerning the series of events that occurred. Finally, although the record does

not clearly reveal if the eyewitness was actually involved in this alleged act or merely a bystander, it does seem evident that the eyewitness saw these events first hand. This lends further credence to the eyewitness' allegations. *See Gates*, 462 U.S. at 234, 103 S.Ct. 2317 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.").

Although the evidence implicating A.I.E. that was presented at the transfer hearing was by no means overwhelming, the Court finds that when viewed within the framework of the totality of the circumstances, it was enough to support a finding of probable cause that A.I.E. committed the alleged act. "In dealing with probable cause, ... as the very name implies, we deal with probabilities." *Id.* at 175.

## C. Other Issues Raised by Appellant A.I.E.

A.I.E. also has raised issues concerning a juvenile's right to discovery before a transfer hearing, the need to conduct psychological examinations to determine if A.I.E. was competent, and the propriety of imposing an automatic stay upon the issuance of a transfer order. The Court finds no merit to A.I.E.'s arguments on these issues.

### 1. Right to Discovery Before Transfer Hearing

█ A.I.E. contends that he was denied his right to conduct meaningful cross-examination at the transfer hearing because he did not receive discovery, including exculpatory material as defined by *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), be-

cause determinations relying on tips from informants. The repudiated two-prong test had required the court to be satisfied with both the veracity of the informant's statement and

the basis of the informant's knowledge before it could base a finding of probable cause on the informant's statements.

fore the proceeding. Although we have ruled that a juvenile should be afforded the opportunity to conduct meaningful cross-examination at a transfer hearing, *see Government of the Virgin Islands in the Interests of A.A.*, 931 F.Supp. 1247, 1253 (D.V.I.1996), this does not necessitate the juvenile being afforded discovery before the transfer hearing.

Cross-examination, by definition, is limited to the subject matter of direct examination. Therefore, in a hearing that is restricted to the court making a determination of probable cause, that probable cause is the only permissible subject for cross-examination. Thus, the juvenile is not entitled to know at the transfer hearing the names of witnesses providing information which would inevitably lead to at least partial discovery of the prosecution's case. More specifically, the discovery provided for in Federal Rule of Criminal Procedure 16 simply is not available during juvenile proceedings.[8] Discovery is not a proper function of a probable cause hearing and the requirements of Rule 16 do not apply until after a finding of probable cause. *United States v. Conway*, 415 F.2d 158, 161 (3d Cir.1969). Although this conclusion is one usually applied to adult criminal prosecutions, a probable cause determination rendered in a juvenile proceeding is indistinguishable from that in an adult criminal proceeding. *Government of the Virgin Islands in the Interest of A.M.*, 34 F.3d 153, 160 (3d Cir.1994). Accordingly, the juvenile is not entitled to discovery pursuant to Rule 16 before the transfer hearing.

The juvenile likewise has no entitlement to *Brady* materials before the transfer hearing proceeding. "There can be no violation of *Brady* unless the Government's non-disclosure infringes upon the defendant's fair trial right.... No denial of due process occurs if *Brady* material is disclosed in time for its effective use at trial."

*United States v. Starusko*, 729 F.2d 256, 262 (3d Cir.1984). Since the adult criminal prosecution has been stayed pending resolution of this appeal, the government presumably will provide A.I.E. with any *Brady* material in time for its effective use at trial, or suffer the consequences.

## 2. Psychological Examinations

■ A.I.E. also contends that the trial judge failed to order a psychological examination to determine if A.I.E. was competent to proceed when there were grounds to indicate that A.I.E. was substantially retarded or mentally ill, or both. Section 2509(b) of Title 5 requires the trial court to stay all proceedings until a determination of the child's competence when "there are grounds to believe the child is substantially retarded or mentally ill." The only evidence offered by A.I.E. to support a conclusion that there were grounds to cause the court to question A.I.E.'s competence was that he had been involved in "various actions prior to the instant case which would constitute crimes if A.I.E." was an adult. (Appellant A.I.E.'s Br. at 43.) The simple recitation that a juvenile had committed serious acts of juvenile delinquency is hardly sufficient to prompt the trial judge to question the juvenile's competence. On the record before the trial court as presented on appeal, the trial court did not err in failing *sua sponte* to order a psychological examination of A.I.E.

## 3. Automatic Stay of Transfer Orders

■ Finally, the Court rejects A.I.E.'s assertion that transfer orders should be automatically stayed pending review by the Appellate Division. The burden rests heavily on the juvenile's counsel to immediately seek a stay from the Family Division, or alternatively, from the Appellate Division, but it nevertheless can be accomplished. *See* V.I.R.APP.P. 8(b). Furthermore, as evidenced in this matter,[9] not all

---

**8.** The Federal Rules of Criminal Procedure apply in the Territorial Court, to the extent they are consistent with the Rules of the Territorial Court. TERR.CT.R. 7.

**9.** *See supra* note 2.

**546**

juveniles choose to appeal the orders transferring them to the Criminal Division. We can find no reason to interfere with juvenile or criminal proceedings in the Territorial Court when the Virgin Islands Rules of Appellate Procedure provide a ready means of relief.

## IV. CONCLUSION

Under the totality of the circumstances presented at the transfer hearing, the Territorial Court properly found probable cause to transfer A.I.E. to the Criminal Division to be tried as an adult. The Court rejects A.I.E.'s assertions that a juvenile is entitled to discovery before a transfer hearing and that the trial court had an obligation to *sua sponte* order a psychological evaluation where there were no reasonable grounds presented to support the conclusion that A.I.E. was incompetent to proceed. Finally, the Court does not find it warranted to impose an automatic stay on every transfer order issued by the Territorial Court. Accordingly, the Court will affirm the order transferring A.I.E. to the Criminal Division of the Territorial Court.

The Family Division's failure to conduct an inquiry into the obvious conflict of interest of the Territorial Public Defender's representation of O.B. was plain error. This error resulted in O.B. being denied his Sixth Amendment right to effective assistance of counsel and requires that this Court vacate the order transferring O.B. to the Criminal Division. The Court will remand this matter to the Family Division for further proceedings.

### ORDER

For the reasons set forth in the accompanying memorandum opinion of even date, it is hereby

**ORDERED** that the order of the Territorial Court entered on July 20, 1997, transferring the appellant A.I.E. to the Criminal Division of the Territorial Court is **AFFIRMED.** It is further

**ORDERED** that the order of the Territorial Court entered on July 20, 1997, transferring the appellant O.B. to the Criminal Division of the Territorial Court is **VACATED.** This matter is **REMANDED** to the Territorial Court for further proceedings consistent with the attached memorandum opinion.